## BIG COTTONWOOD TANNER DITCH CO. et al. v. SHURTLIFF et ux.

No. 3374.    Decided Nov. 28, 1919.    On Modification of Opinion, April 21, 1920.    (189 Pac. 587.)

1.    WATERS AND WATER COURSES—USERS HELD ENTITLED TO FLOW FOR CULINARY PURPOSES IN ADDITION TO THAT ALLOWED FOR IRRI-GATION.    In an action by an irrigation company against users of water from its ditch, *held*, that users were entitled to the continuous flow they had used for years for culinary and domestic purposes in addition to the quantity awarded for irrigation.[1]

2.    WATERS AND WATER COURSES—DITCH COMPANY ENTITLED TO WASTE WATER SAVED BY IMPROVING CONDUIT.    20,000 gallons of water delivered daily at defendant's home for culinary purposes *held* proper, although in excess of amount generally used by others under similar circumstances, and where, because of waste of ditch, 323,000 gallons must be released to supply such amount, it was proper to allow plaintiff irrigation company the privilege to construct an economical conduit and use the water saved. [2]

3.    WATERS AND WATER COURSES—COURTS MAY PERMIT USER TO CHANGE PRIOR USER'S METHOD OF DIVERSION TO SAVE WASTE. While an original appropriator of water acquires a right in his

---

[1] *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff*, 49 Utah 574, 164 Pac. 856.

[2] *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff*, 49 Utah 574, 164 Pac. 856.

means or method of diversion which may not be changed to his prejudice, yet, if another user who is entitled to the water can by changing the manner of diversion save water, the courts may permit him to make such change and use the water saved. [3]

4. WATERS AND WATER COURSES—JURISDICTION OF WATER CASE NOT LOST BY RENDERING DECREES, AND SAME MAY BE AMENDED. Courts do not lose jurisdiction of water cases after entering judgments or decrees and may on proper notice and hearing make appropriate changes in the place of use or diversion of water in addendum to the decree.

5. APPEAL AND ERROR—REVIEW OF DECREE LIMITED TO MATTERS PRESENTED. Although the court may believe a decree erroneous in a particular matter, it has no alternative but to affirm the decree where such matter is not presented for review.

ON MODIFICATION OF OPINION.

6. WATERS AND WATER COURSES—USER HELD NOT ENTITLED TO WATER THAT COULD BE SAVED BY IMPROVED CONDUIT. Where defendants were granted a certain flow from irrigation company's ditch for culinary and domestic purposes in order that a sufficient quantity reach their home through their open ditch, and the irrigation company entitled to the water was given a right to construct a better conduit therefor and use water saved, *held*, that defendants may not be allowed to construct a more economical ditch and use the water saved.

7. APPEAL AND ERROR—REPLY BRIEF FILED OUT OF TIME WITHOUT LEAVE NOT CONSIDERED. Where a reply brief was attempted to be filed more than thirty days after time allowed by court rules and without application for leave therefor, it will not be considered.

Appeal from District Court, Third District, Salt Lake County; *Wm. H. Bramel,* Judge.

Action by the Big Cottonwood Tanner Ditch Company and others against Vincent Shurtliff and wife. From a decree rendered the plaintiffs appeal, and respondents cross-appeal.

REMANDED, with directions to make certain modifications, and otherwise AFFIRMED.

[3] *Salt Lake City* v. *Gardner*, 39 Utah 30, 114 Pac. 147.

See, also, 49 Utah 569, 164 Pac. 856, 54 Utah 5, 174 Pac. 1124.

*D. W. Moffat,* of Murray, and *Ray Van Cott, Oscar W. Moyle, Walter C. Hurd,* and *Olson & Lewis,* all of Salt Lake City, for appellants.

*Stewart, Stewart & Alexander,* of Salt Lake City, for respondents.

FRICK, J.

This case is here on second appeal. See 49 Utah, 569, 164 Pac. 856. The first appeal was taken by Vincent and Mary Shurtliff, hereinafter called respondents, alone, while the plaintiff corporation and other defendants in the action, hereinafter styled appellants, now appeal. On the first appeal the findings of fact, conclusions of law, and the decree made and entered by the district court were affirmed as to all the defendants except the respondents on this appeal, and were also affirmed in favor of the plaintiff corporation except upon two questions hereinafter more specifically stated. The cause was accordingly remanded to the district court, with directions to hear further evidence upon the two questions reserved and to make findings of fact and conclusions of law and to enter a decree upon those questions. The district court has fully complied with the directions of this court in that regard, and the present appeal is from the judgment or decree entered pursuant to the directions of this court as just stated.

In view that certain parties now attempt to appeal whose rights as fixed by the district court in the former decree were affirmed by this court, the case might present some complications were it not for the fact that counsel for all of the appellants have, in their brief, limited their contention, which, stating it in their own language, is as follows:

"There is only one fact or point to be determined, and that one is: Shall the respondents, Shurtliff, have an additional fixed quantity of water flowing constantly for culinary uses above and over their proportion as determined by the number of shares owned by them,

or shall they be required to supply themselves with culinary water
out of their share or proportion decreed to them by the court?"

In support of their contention, counsel vigorously insist
that the district court erred in its construction of the former
opinion respecting what was adjudicated by this court.  They
also urge with much vigor that this court erred in its former
conclusions of law, and that we should revise and  modify
those conclusions, and in that connection say  that  in  the
former opinion we held that the appellants there (respondents
here) were not entitled to water for culinary and domestic
purposes in addition to the water. awarded them for irriga-
tion.  In making these contentions, counsel inadvertently have
themselves placed an erroneous construction upon what is said
in the former opinion in regard to the rights of the respond-
ents to the use of water for domestic and culinary purposes in
addition to the water awarded'them for irrigation.  By refer-
· ence to 49 Utah, page 574, 164 Pac. 856, it will be seen that
the writer stated the propositions for which counsel for the
respondents were contending with regard to their water right
for irrigation:   (1) That they were not bound by the arbitra-
tion agreement of 1879 entered into by Harker, their prede-
cessor in interest, because they were not parties to that agree-
ment; and (2) that they should have been awarded the water
originally appropriated by their predecessor before the arbi-
tration agreement of 1879 was entered into, and that the
water should have been apportioned to them in second feet in-
stead of in shares, as was done by the district court.  It was
there said that counsel was in  error  on  both  propositions.
Counsel for appellants on this appeal, however, now insist
that what we there said applied to the water rights of the
respondents both for irrigation and for culinary and domestic
purposes.  In that contention counsel are clearly in error.  If
counsel will only cursorily examine all that is said on pages
575 and 576 (164 Pac. 858 and 859) upon those subjects, they
will see that we segregated the water rights'claimed by the
respondents for culinary and domestic purposes from that
claimed by them for irrigation purposes, and that we did not
consider the water claimed by them for culinary and domestic

purposes in anything we said on page 574 (164 Pac. 858), but did state their claim to the latter right on page 575 (164 Pac. 858), and again on page 577 (164 Pac. 859), where their assignments of error on the former appeal were referred to. In that opinion, therefore, we affirmed the district court's findings of fact and conclusions of law and decree respecting their rights to irrigation water as fixed by the district court, but refused to affirm the court's findings, conclusions of law, and decree respecting their rights to the use of water for culinary and domestic purposes. We, however, adjudicated that they were entitled to water for culinary and domestic purposes in addition to water for irrigation; but, in view that in the opinion of the majority of this court their claim in that regard seemed grossly excessive and wasteful, the cause was remanded to the district court to determine their necessities in that regard. See pages 586, 587 and 589 (164 Pac. 862, 863, and 864). True, the cause was also remanded for another purpose, but, in view that all parties now seem satisfied with the changes that were made by the district court on the last hearing in that regard, that phase of the case requires no further consideration.

In view of what has already been said, it necessarily follows that the question propounded by appellants' counsel, namely, are the respondents on this appeal entitled to a continuous flow of water for culinary and domestic purposes, must be answered in the affirmative. Further, that the district court did not err in awarding to the respondents water for culinary and domestic purposes in addition to the quantity of water they were awarded in the former decree for irrigation purposes. Nor can counsel's contention that the district court erred in its construction of the former opinion prevail.

The court, however, entered judgment by which it awarded the respondents on this appeal a continuous flow of one-half of a second foot of water for culinary and domestic purposes, measured at the diversion point, in addition to their water right for irrigation. This award was based upon a finding that it was necessary to divert that quantity of water from

the main ditch in order to overcome the waste by seepage, evaporation, etc., and in order to supply respondents with pure and potable water at their dewelling, which, the evidence now shows, is 807 feet distant from the point of diversion and that for that distance the water is conducted in an open ditch over porous and gravelly soil. The evidence also shows that the quantity of water wasted each day in conducting the same, as just stated, amounts to at least 130,000 gallons, and there is some evidence which makes the waste considerably greater in amount than that. Taking the figures just stated, however, the evidence is conclusive that in order to provide respondents with pure and potable water there must each day be diverted from the main ditch into respondents' culinary ditch over 323,000 gallons, of which, necessarily, a vast amount must be wasted by seepage, evaporation, etc. That fact was manifestly apparent to the district court, as it must be to all others; but in view that at least since 1883 respondents' means of diversion from the main ditch was the open ditch aforesaid, the court felt constrained to permit that condition to continue indefinitely. The court, however, awarded respondents the quantity of water aforesaid conditionally merely. The court, in the decree, awarded the ditch company the right, if it felt so disposed, to conduct the water to respondents' home through a pipe line, or by some other appropriate and proper means, and adjudged that, if it supplied respondents with a continuous flow of 20,000 gallons of water daily of the same purity and quality as it flows in the main ditch at the point of diverson, then, and in that event, said company would have the right to distribute through its ditch the quantity of water thus saved by the means aforesaid. The respondents are thus given a continuous flow of one-half second foot of water measured at the point of diversion, or, in lieu thereof, a continuous flow of 20,000 gallons each day if that can be provided for them at their home by means of pipes or by some other appropriate means of diversion. Appellants do not complain of the foregoing provision in the decree, but respondents have taken a cross-appeal from that portion of the decree, and their counsel insist that the district court erred in

granting the ditch company the right to conduct the water as stated. Counsel argue with much vigor that the court was powerless to impose any conditions, and that in doing so it is taking something from the respondents and is giving it to the ditch company without legal sanction or authority. The claims of counsel in that regard are somewhat unique. For example, their contention is that it is necessary to divert the one-half second foot of water at the point of intake for the reason that respondents have no other means of diversion except through the open ditch, and that by that means of diversion much water is wasted in passing over the gravelly and porous soil, and in order to preserve the purity and potability of the water at their home such a waste is necessary and cannot be prevented or avoided by any court order or judgment. In so contending counsel necessarily concede that a great waste of water is unavoidable if the means        2 of diversion through the open ditch be continued. But whether that fact be conceded or not, the evidence is conclusive that the amount of water claimed by respondents for culinary purposes is grossly excessive and results in a frightful waste of water in this arid region. That fact is clearly pointed out in the former opinion. Upon the present inquiry, however, the evidence upon that point is made clearer still and is practically without dispute.

The evidence shows that the per capita consumption of water in Salt Lake City for culinary, lawn sprinkling, toilet purposes and flushing and sprinkling streets—in short, for all purposes—does not exceed 200 gallons each day, while respondents claim a daily supply of water of over 323,000 gallons for culinary and domestic purposes for a small family and for only a few head of stock. This, in this arid region where the evidence conclusively shows, there is practically a constant scarcity of water, and where the ditch company nearly always received less than the amount of its original appropriation for the most useful purposes, amounts, to say the least, to a most profligate waste of water, which waste should, if possible, be minimized if it cannot be entirely prevented. Counsel for respondents appreciate the situation in

that regard, and hence in their brief they now claim that the respondents should be permitted to use the water in excess of what is necessary for culinary purposes to irrigate their orchard or garden. This claim cannot be allowed for the reasons stated in the former opinion and for the further reason that it was determined against respondents' contention on the former hearing. Counsel, however, refer to the dissenting opinion of the late Mr. Justice McCarty, in which it is said that respondents should be awarded the excess for the garden and orchard purposes. In this connection, counsel overlook two very important matters: (1) That Mr. Justice McCarty's opinion did not prevail as the opinion of the court, and (2) that the claim as now made was not insisted on in the former appeal. What counsel for respondents then contended for, stating it in their own words, was that the court erred in not finding that respondents were entitled "to water for culinary, domestic, and live stock purposes separate and apart from irrigation water," and that the court also erred in not finding that respondents *"are entitled to said one-half second foot of water for culinary, domestic and stock purposes."* (Italics ours.) That was the claim then put forward in the assignments of error and argued, and that is the only claim which was permissible in view of the record, and is the only claim that is permissible now.

Nor is there any merit to the contention that in limiting respondents to a daily use of 20,000 gallons delivered at their home, in case the ditch company elects to do that under the conditions stated in the decree, the ditch company is awarded something and the respondents are deprived of something contrary to law and right. The evidence is without any conflict whatever that all the water flowing in Big Cottonwood creek, which is the source of supply of all the parties to this action, has been appropriated and beneficially used for more than sixty years; that the ditch company has succeeded to all water rights flowing in the ditches involved in this proceeding subject to the rights of the water users on the ditches; and that it is only during the short high-water season in each year that the ditch company and the other water users receive the

full quantity they are entitled to under the arbitration agreement of 1879. From that it follows that, if the ditch company shall save the daily waste of more than 300,000 gallons, it, nevertheless, will still be short of the full amount of its rights, and hence will not, as stated by counsel for respondents, be awarded something to which it is not legally entitled. Upon the other hand, it is not easy to perceive how the respondents can be prejudiced by awarding to the ditch company the water that would thus be saved. How can respondents lose what they never had? No part of the waste water was or could have been used by them for any purpose, and hence they can suffer no loss so far as the waste water is concerned. Nor, as pointed out in the former opinion, are they entitled to more water for culinary and domestic purposes than their necessities require.

Neither is it true, as contended by counsel that the courts are without power to change or to in any way affect the water user's means or method of diversion. That question was before this court and was decided in the case of *Salt Lake City* v. *Gardner,* 39 Utah, 30, 114 Pac. 147.        **3** It was there held that while the original appropriator of water acquires such a right in his means or method of diverting water from a stream and that such means or method may not be interfered with or changed to his prejudice by another water user, yet it was there also clearly held that, if another water user who is entitled to the water can save the water and can put it to a beneficial use by changing the manner of diversion of the prior water user, he may do so if it be done at his own cost and expense, and if he preserves and maintains all the rights of the prior user whose means or method of diversion is thus changed or affected. That principle applies to this case. If therefore the ditch company can save the 300,000 gallons daily which now seem to be wasted by substituting another and better method or means of diverting respondents' water and of conducting the same to their home, and in doing so shall defray all the expenses and shall preserve the purity and potability of the water as it is now received by respondents, we can perceive

no good reason why such may not be done. That is all that the decree of the district court provides for. Indeed, under all of the evidence, the quantity of water allowed the respondents in the decree is most liberal in view that it provides for a continuous flow. Under the evidence the respondents will still have practically 19,000 gallons of water daily, in excess of their culinary and domestic needs, to apply to their garden, which would amount to nearly a quarter of a second foot of water every seven days to be applied to that purpose. Respondents' rights, as well as their necessities, are therefore well provided for and amply safe-guarded by the decree as it now stands.

Respondents' counsel, however, further contend that the decree is too indefinite and uncertain regarding the manner and method of changing respondents' present means or method of diversion. There is some merit to that contention. It is a matter that can easily be remedied, however. While the evidence shows that the present length of respondents' open ditch is as hereinbefore stated, yet there is nothing in the evidence to show that a pipe line or some other suitable and proper means of diversion may not be made shorter. Nor did the court provide how the pipes should be laid so as to insure a continuous flow of water at all seasons of the year at their home. All these matters can, however, easily be provided for in an addendum to the decree as it now stands. Moreover, water cases, as has repeatedly been decided by this court, are unlike other cases of which courts lose jurisdiction after entering judgments or decrees. In those cases the courts continue to have jurisdiction and may at most any time, upon proper notice and hearing, make appropriate changes in the place of use or diversion of water, etc.

Before concluding this opinion, and in order to avoid any misunderstanding, we desire to state that in arriving at the foregoing conclusion we have not been unmindful of the conditions prevailing along the ditches owned by the ditch company, including the one from which respondents divert water, and that during nearly the whole of the

irrigation season it is necessary to apportion all of the water flowing in the ditch from which respondents take their supply to the several water users along said ditch for a specified period of time, and that each water user must wait his turn, and that from those conditions it follows that when the water is all turned out of the ditch to one user there is no water flowing in the ditch below the point of intake or diversion of such user. The evidence, however, shows that the conditions just stated do not apply to respondents, because they are at, or nearly at, the highest point of intake, and hence there is practically a constant flow of water in the ditch at their point of diversion. It must also be kept in mind that by reason of the fact that respondents' lands are located at the highest point of the ditch they cannot obtain water for culinary purposes except through the ditch as explained in the former opinion. In reading this opinion, therefore, the foregoing conditions must constantly be kept in mind, and it must also be read and applied in connection with all that is said in the former opinion respecting conditions. It must not be assumed, therefore, by anything that is said in this opinion, that any water user lower down the ditch may insist upon a continuous flow of water from the ditch during the irrigation season. In view that the water is all taken out of the ditch during that season by each water user when his turn comes, it would be impossible to have a continuous flow in the ditch except at respondents' point of diversion, and it can be maintained there only for the reasons stated. It is the peculiar conditions respondents are subjected to, as well as their actual necessities, therefore, which have controlled us in arriving at the conclusions before stated. While in the writer's judgment respondents are given more water by the district court's decree than they actually need for culinary and domestic purposes, yet, in view of the fact that that question is not presented for review, we have no alternative save to affirm the district court's findings and decree upon that point.

From what has been said it follows that the findings of fact, conclusions of law, and decree as made by the district court should be, and they accordingly are, affirmed on both appeals.

The case, however, is remanded to the district court of Salt Lake county, with directions to take the necessary changes as herein suggested in case the ditch company shall elect to change respondents' means or method of diversion as herein contemplated. Neither party shall recover costs on this appeal.

CORFMAN, C. J., and GIDEON and THURMAN, JJ., concur.

WEBER, J., being disqualified, did not participate herein.

ON MODIFICATION OF OPINION.

FRICK, J.

The respondents have filed an application in which they ask this court to modify the last opinion filed in this case in the particulars hereinafter indicated.

They now ask to be given the preferential right to construct a pipe line through which to take the water from their diverting point on the main ditch to their premises and to be awarded all the water that may be saved thereby. The application is based upon the theory that in view that the district court awarded respondents one-half of one second foot of water at their diverting point or intake, and that a considerable quantity of water is wasted in being conducted through the open ditch, therefore, if water may be saved by means of a pipe line, the respondents should have the preferential right of saving and using it. The claim is, however, in our judgment, not supported by the premises. Neither the district court nor this court has awarded respondents one-half of one second foot of water. What was done, in substance, was this: The district court found that owing to seepage, evaporation, and other causes, in order to supply respondents with pure potable water at their home through the open ditch it was necessary to divert one-half of one second foot of water from the main ditch at their point of

diversion. That quantity of water was therefore permitted to be diverted from the main ditch only because the court found that if a lesser quantity of water were diverted it would not be pure potable water and fit for culinary use when it reached respondents' home. The court did not award them one-half of one second foot of water for culinary purposes, nor for any other purpose; and that quantity was allowed only for the reasons just stated. Nor did this court authorize the use of that quantity of water. Indeed, this court has already held that one-half of one second foot of water was excessive for culinary and domestic purposes.

In view that all of the water users along the ditch in question are tenants in common of all of the water flowing in the ditch, and of the sources of supply, the question of prior rights is entirely eliminated from this case. The district court found that the respondents had acquired a right in their means of diverting water from the main ditch, namely, through the open ditch. It further appeared from the evidence that in taking the water through that ditch there was necessarily a great waste of water which could be put to a beneficial use by the plaintiff company by distributing it to the water users along the main ditch, who, during the low-water season, were always short of water. The court therefore, in accordance with the principles laid down in the case of *Salt Lake City* v. *Gardner,* 39 Utah 30, 114 Pac. 147, while recognizing respondents' right in their means of diversion, nevertheless gave the plaintiff company the right to put in a pipe line as an improved means of diversion at its own expense and by that means save the water which was being wasted through respondents' open ditch; and, after delivering respondents' 20,000 gallons daily at their home, the company was permitted to distribute the water thus saved among the water users along the ditch, as before stated.

We have no means of knowing what was in the court's mind when it found the quantity of water that should be delivered to be 20,000 gallons daily, but it may well be that that quantity may have been based, partially at least, upon the fact that all the water users along the ditch in ques-

tion, including respondents, are tenants in common and
that all have the same rights in the source of supply and
hence in the water that may be saved; but inasmuch as the
plaintiff company was required to defray the entire expense
of putting in the pipe line, then, as a matter of equity merely,
it was entitled to the 300,000 gallons or whatever quantity
can be saved to be distributed among the water users along
the ditch. The respondents, in being awarded 20,000 gallons
daily for culinary and domestic purposes, were thus given
at least a portion of the water saved as tenants in common
with the other water users. As stated, while we do not know
what induced the court to fix the quantity of water at 20,000
gallons daily, yet, in view that that amount is more than
seems necessary for respondents' needs for culinary purposes,
and in view that as tenants in common they would be entitled
to an equitable proportion of the quantity that is saved, the
court may, to some extent at least, have been prompted to
fix the quantity for the reasons just stated. It may well be
that in view that all of the water users along the ditch in
question are tenants in common, and therefore their rights to
the use of the water are governed by that relationship, in case
they all contributed ratably to the cost and expense of saving
the water they should also be given their equitable propor-
tion, whatever that may be, of the quantity of water saved.
Respondents are, however, not required to contribute any-
thing to the costs and expenses of saving the water, and, in
view of the liberal quantity awarded them for their daily use,
we cannot see how they can justly complain. Moreover, in
view that the respondents insisted upon the right to take
water through the open ditch after it had been established by
indubitable evidence and adjudged by this court that that
method was exceedingly wasteful in view of the scarcity of
water, they are in no position now to insist upon a prefer-
ential right. If they were not tenants in common with all of
the other water users along the ditch, and could now, as their
counsel contend, acquire an adverse and prior right in the
water as against the other tenants in common, there would be
much force to counsel's contention.

Lest we be again misunderstood, let us again emphasize the fact that this case, for the reasons stated in this and in the former opinions, is sui generis. It is a class by itself. As pointed out in the opinion, the right to a continuous flow of water for culinary purposes was awarded to the respondents for the sole reason that the conditions surrounding them were most peculiar, so peculiar in fact that the same conditions did not apply to any other water user along the ditch. Not to have awarded them a continuous flow would have resulted in a hardship that it would have been highly unjust not to have prevented. Nor does the plaintiff company, or any of the other water users, stand in a better light in a court of equity. Each and all have at all times insisted upon propositions which, under the circumstances, we have been compelled to hold unwarranted, and each and all of them have placed the whole burden upon the courts to work out the rights and equities arising out of the case. That we have attempted to do to the best of our ability and understanding, and in view of all the circumstances of this case we feel constrained to observe that in view of that fact the parties must now be content with our best efforts. The decision in this case therefore merely reflects the peculiar and inherent equities of this case and no other.

There is, however, some force in respondents' contention that, in case the plaintiff company shall fail to put in a pipe line to prevent the water from being wasted, some one should be permitted to do so. Under the circumstances, and in view of the great scarcity of water in the valley, especially during the low-water season, no court would be justified in permitting an unnecessary waste of water to continue, regardless of how long that condition has existed. Again, although the water users along the ditch are tenants in common as before stated, yet the one who is willing to make an effort to save water and to pay the costs and expenses incident to making such effort by means of pipe lines or otherwise should be encouraged and be given a fair share of the water saved, precisely as was done by the district court in this case. While we are of the opinion that in view of all the circumstances the order giving the

plaintiff company the preferential right to construct a pipe line and to distribute the water that may be saved in excess of 20,000 gallons daily among the water users along the ditch is fair and just, yet a further order should be made that, in case the plaintiff company fails or refuses to act within a reasonable time to be fixed by the district court, the respondents should be given the permission to put in the pipe line at their own expense and by that means to save the water that is now wasted. In case the respondents should put in the pipe line, the question arises: How should the quantity of water saved be ascertained? The only correct method to ascertain that quantity that we know of is for the court to cause that quantity, that is, the one-half second foot of water that is being diverted into respondents' open ditch at the point of diversion, to be accurately measured, and then cause the quantity of water that is actually discharged at the respondents' premises through the open ditch to be also accurately measured, and ascertain the difference between the two quantities. In case respondents put in the pipe line, then the quantity of water actually saved by means of such pipe line, out of the one-half second foot, should be awarded to respondents in addition to the 20,000 gallons now awarded them. In order to arrive at a just result, however, measurements as suggested should be made by a person appointed by the court or by one agreed upon by the parties with the approval of the court, and the measurements should be made over such a reasonable period of time and such number of times as may be deemed necessary to obtain an accurate result. In view that the question was not considered by the district court, we shall not fix the time within which the plaintiff company must put in the pipe line, nor the period of time over which nor the number of measurements that shall be made in case the plaintiff company fails to act within the time fixed by the court.

We remark that although the plaintiff company, upon its own motion, was given an extension of time within which to file an application for a rehearing, it failed to file such an application within the time fixed by this court. It however, attempted to file a reply in which it opposes        7

Big Cottonwood Tanner D. Co. et al. v. Shurtliff et ux., 56 Utah 196

respondents' application for a modification of the opinion. The reply was, however, not attempted to be filed until more than thirty days after the time within which, under the rules of this court, it should have been filed. While this court is very lenient with respect to the time within which briefs and other papers may be filed in pending cases, yet we must have some regard for our rules and cannot permit the parties to file briefs and papers at any time they feel inclined to do so. In view, therefore, that the so-called reply brief was attempted to be filed more than thirty days after the time within which it should have been filed, and without making any applications for leave to file the same, we have felt constrained not to consider the same.

For the reasons stated, in addition to the other modifications required in the original opinion, the district court is also directed to fix some reasonable time limit within which the plaintiff company shall put in a pipe line, and, in case it shall fail or refuse to do so within the time fixed, then to permit the respondents to put in the pipe line at their own expense and, after the measurements are made as herein suggested, then to enter an order fixing the quantity of water that is being saved by means of the pipe line and permit the respondents to divert such quantity from the main ditch into the pipe line and use the same on their premises. In all other respects the former opinion is .adhered to.

CORFMAN, C. J., and GIDEON and THURMAN, JJ., concur.