## OUTLOOK CO. v. MALCO PRODUCTS CORPORATION.

(District Court, E. D.* New York. May 21, 1924.)

1. **Patents ⊂⇛328—993,816, for wind shield cleaner, held valid, but not infringed.**

The Beitman patent, No. 993,816, for a wind shield cleaner, claims 1 and 6, cover a novel and patentable combination of old elements and are valid, but limited to the precise construction shown. As so construed, *held* not infringed.

2. **Patents ⊂⇛328—1,422,158, for means for connecting two elements, held void for lack of invention.**

The Williams patent, No. 1,422,158, for means for connecting two elements, as a crank and a shaft or spindle, designed to be rotated by the crank, claim 1, *held* void for lack of novelty or invention.

3. **Patents ⊂⇛20, 236—Dividing a part or combining two parts, without change of function, does not constitute invention.**

Dividing a part or combining two parts does not avoid infringement, nor constitute invention, unless the change in the number of parts causes them to perform a new function.

4. **Patents ⊂⇛21—Substitution of metal for wood, or wood for metal, not alone sufficient to constitute invention.**

Substitution of metal for wood, or of wood for metal, is not alone sufficient to differentiate a patented structure from the prior art.

In Equity. Suit by the Outlook Company against the Malco Products Corporation. Decree for defendant.

Cooper, Kerr & Dunham, of New York City (Charles E. Brock, of Cleveland, Ohio, of counsel), for plaintiff.

Charles Neave, of New York City, for defendant.

CAMPBELL, District Judge. This is a suit in equity, brought by the plaintiff to restrain the alleged infringement by the defendant of patent No. 993,816, issued by the United States Patent Office to Albert B. Beitman, dated May 30, 1911, and patent No. 1,422,158, issued by the United States Patent Office to John H. Williams, assignor to the Outlook Company, dated July 11, 1922, and for damages. The plaintiff is the owner of said patents, and bases its claim in this suit on claims 1 and 6 of patent No. 993,816, and claim 1 of patent No. 1,422,158.

The defendant has interposed the answer of invalidity and noninfringement as to both of said patents. The first-mentioned patent is for a wind shield cleaner, and the patent secondly mentioned is for means for connecting two elements. For convenience I will treat the two patents separately in the above order.

[1] Claims 1 and 6 of the Beitman patent, No. 993,816, read as follows:

"1. A wind shield cleaner, comprising a shaft arranged to extend transversely of an edge of a window pane or transparent screen; a suitably supported bracket bearing the shaft and adjustable longitudinally of the said edge, and a wiper holder having a wiper which is arranged to make contact with and extend over the outer side of the pane or screen, said wiper holder being connected to the shaft so as to swing the wiper over the said side of the pane or screen during an oscillation of the shaft."

⊂⇛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"6. The combination, with an upright window pane or transparent screen forming a wind shield, of a shaft arranged above and transversely of the top edge of the pane or screen, which shaft terminates at the outer side of the pane or screen in a depending arm which is spaced from the pane or screen, said shaft terminating at the inner side of the pane or screen in a downwardly projecting lever which is spaced from the pane or screen and arranged substantially parallel with the aforesaid arm; a suitably supported bracket bearing the shaft, and a wiper arranged between the aforesaid arm and the outer side of the pane or screen and extending longitudinally of and connected to the said arm."

The invention and object sought to be attained by the patentee is best described in his own words in the patent in suit (page 1, lines 16–62):

"This invention consists more especially in a wind shield cleaner comprising the following: A wiper arranged to extend over and make contact with the outer side of an upright window pane or transparent screen which constitutes the said wind shield; a shaft arranged to extend transversely of an edge of the said pane or screen and supporting the wiper or cleaner; a bracket supporting the said shaft and capable of being shifted longitudinally of the said edge upon the application of the wind shield cleaner to the said pane or screen, and means whereby the shaft may be locked to the bracket and oscillation of the shaft during the shifting of the bracket along the aforesaid edge is prevented so that when the shaft is locked to the bracket and the wiper is arranged substantially at a right angle to the said edge a shifting of the bracket longitudinally of the said edge moves the wiper as required to substantially wipe the entire outer side of the pane or screen, and so that the shaft, when unlocked from the bracket, may be oscillated in the one or the other direction to swing the wiper over the said side of the pane or screen in a vertical plane to wipe enough of the said side to afford a suitable outlook temporarily to the chauffeur, motorman, or operative.

"Another object is to provide the aforesaid shaft with a lever arranged to extend over the inner side of the pane or screen and to have the aforesaid shaft-locking means capable of locking the said lever to the shaft-supporting bracket, so that the said lever, and consequently the shaft, may be quickly unlocked from the bracket at the inner side of the pane or screen and so that the chauffeur, motorman, or operative is enabled to insure the maintenance of an adequate outlook with facility.

"Another object is to provide the said lever with a friction wheel which frictionally engages the inner side of a pane or screen and thereby prevents vibration of the lever when the lever is unlocked from the bracket."

Page 2, lines 9–17:

"It will be observed, therefore, that the sectional bracket is adjustable endwise of the bar $a$ and consequently longitudinally of the top edge of the pane or screen $A$ and rendered loose relative to the said bar, or secured in the desired adjustment on the said bar, according as the screw $B$ is rotated in the one or the other direction."

Page 3, lines 19–44:

"By the construction hereinbefore described it is obvious that when the sleeve $L$ and connected shaft lever, and consequently the wiper holder, are locked to the shaft-supporting bracket and the latter is clamped to the bar $a$ by the thumbscrew $B$, proper manipulation of the said thumbscrew loosens the bracket sections $C$ and $D$ relative to the said bar $a$, so as to render the bracket, and consequently the wiper holder, free to be moved longitudinally of the bar $a$, and thereby enable the wiper to wipe approximately the entire outer side of the pane or screen $A$. On the other hand, upon loosening the said set screw $16$ to permit the sleeve $L$ to lower, so as to disengage its lug from the recess $20$, the wiper holder is unlocked from the shaft-supporting

bracket, and the said shaft is free to be oscillated and thereby swing the wiper over the outer side of the pane or screen *A*, so as to wipe enough of the said side of the pane or screen to afford a temporarily suitable outlook through the pane or screen to the chauffeur, motorman, or operative having charge of the shaft-operating lever."

From the reading of the specification it appears that the shaft and both depending arms are made of the same piece of metal.

The defendant offered the following United States patents to show the prior state of the art:

No. 387,919, issued to David G. Richards, dated August 14, 1888, shows a window cleaner designed more especially for cleaning the engineer's lookout window on a locomotive, with an arm outside mounted on a spindle which extends through and is journaled to the frame, and is operated by a handle which when turned swings or oscillates the cleaner back and forth.

No. 606,995, issued to Jacob Kirchmer, Jr., dated July 5, 1898, shows a window cleaner designed for cleaning the snow and ice off the windows of the vestibules of electric or other cars. The window being closed, the cleaner on the outside of the window is attached to a shaft which passes through a hole in the frame, and to the inner end of the shaft is attached a crank which when turned oscillates the cleaner.

No. 694,615, issued to Bernard L. Cohn, dated March 4, 1902, shows a window washer which cannot be more easily or better described than in the words of the patent itself (page 1, lines 19–41):

"In carrying out these objects my invention consists of a support adapted to be clamped to the window sill or frame in combination with two substantially parallel arms pivoted to the support and leading therefrom upward on each side of the sash, thus embracing the glass, said arms being provided with rubbers at their upper ends, which are held in contact, respectively, with the inside and outside of the glass, by the natural spring of the arms or otherwise, so that when the arms are swung on their pivotal support the rubbers will at each stroke scrub both sides of the glass in an arc-shaped path, and by moving the sash up or down at the same time nearly the entire surface of the glass will be traversed by the rubbers.

"My invention also comprehends a construction for the arms, whereby they may be extended at will, so that the rubbers can be directed into the corners or other portions of the glass which cannot be touched by the normal swing of the apparatus on its pivot."

No. 708,299, issued to Esten B. Beeler, dated September 2, 1902, shows a window cleaner which is held to the sill by the sash or more securely fastened by a thumbscrew, the sash being slightly raised and resting in a recess on the top of a block, through which passes a shaft to the outer end of which is attached a lever, to the other end of which is attached the cleaning device. At the inner end of the shaft is a handle, by rotating or turning which the cleaner oscillates and cleans a portion of the window; but, as the patentee intended to provide for cleaning the whole outside of the window, a fulcrum arm is pivoted to the lever, and a collar loosely mounted on the shaft and retained in contact with the block, and by moving the shaft to and fro through the block and collar by means of the handle an up and down movement of the cleaner is produced.

There is no doubt that the oscillating movement can be obtained as described in this patent, and the window cleaned in the path of the oscillation; but the arrangement of toggles and levers is not properly proportioned to clean the window in an up and down path, and while this might be corrected, it is not of interest in the case at bar, as the defendant's structure has only the oscillating movement. The oscillating movement described in this patent is not shown in the model offered in evidence by the plaintiff.

No. 866,996, issued to Franklin Ames, dated September 24, 1907, shows a screen-cleaning apparatus for automobiles, which is affixed to the frame through which the shaft passes. The shaft has no longitudinal movement in its bearings, and the arm is always in the position to hold the wiper against the glass; the wiper being held in contact with the glass by the resilience of the arm carrying it.

No. 942,743, issued to Clinton E. Prickett, dated December 7, 1909, shows a window-cleaning apparatus designed especially to be employed on the front windows of street cars or wind shields of automobiles or the like, and differs materially from the former cited patents in the means provided for holding the wiper against the glass, in that an expansion spring *20* is seated in a socket *21*, provided at an intermediate point in the arm support *11*, and forces the cleaner arm *15*, with its attached wiper, towards the glass.

No. 944,245, issued to Thomas J. Rochford, dated December 21, 1909, shows cleaner for windows, particularly adapted for use in connection with automobile wind shields, street car windows, and the like, the operation of which is best described in the patent (page 1, lines 25–33):

"The device operates by movement from side to side, having a vertical wiper strip arranged to press against the front of the glass, and supported in position by a slide which travels on a track on the frame of the shield, and operated by means of a handle which extends over the upper edge of the shield and has a spring bearing against the back of the shield."

No. 956,770, issued to Carl A. Kellogg, dated May 3, 1910, shows window wiping device particularly adapted for use in connection with the cabs of locomotives and the vestibules of electric cars, the windows of which being closed, the shaft extends through a hole in the window frame, the wiper is held against the glass on the outside by the action of a spring, and on the inner end of the shaft is a handle by which the cleaner may be caused to move backward and forward from side to side.

No. 1,017,078, issued to Henry F. Buth, dated February 13, 1912, shows improvement in automobile glass screen cleaners with a shaft passing through an opening in the frame and means provided for preventing the shaft from moving longitudinally in its bearings, so that the arm may always be in position to hold the wiper against the glass; the wiper being held in contact with the glass by the resilience of the arm carrying it.

No. 1,112,793, issued to Charles J. Heineman, dated October 6, 1914, shows improvement in wind shield cleaners, which is described in the patent as follows:

"The frame carrying the strip of rubber which is to be wiped back and forth at will over the front surface of the glass is provided with a guiding clamp adapted to be mounted upon the upper tube or sash of the glass and to be moved back and forth thereon. The strip of rubber or wiper is pivotally mounted upon the lower end of a rod depending from the guide; the said rod extending to the other side or back of the glass and provided there with a spring stud adapted to press against and ride upon such back surface of the glass and thus hold the rubber strip firmly in wiping contact against the front surface thereof as the guide is moved back and forth in the act of cleaning."

The rod referred to is an integral unitary bent rod.

The Buth and Heineman patents were granted after the patent in suit was granted to Beitman, but their applications were filed before Beitman, and sales were made of the Heineman structure, and they were offered to show the dates of their invention; but they do not show the subject-matter of the Beitman invention as set forth in claims 1 and 6, and cannot be prior art as to Beitman. Sundh Electric Co. v. Interborough Rapid Transit Co., 198 Fed. 94, 117 C. C. A. 280.

None of the patents hereinbefore cited so nearly approximate the elements of the Beitman patent in suit as does the Heineman patent, and even in that patent the following essential differences exist:

The cleaner attached to the outside depending arm is not held in wiping contact against the front surface of the glass by the spring action of the depending arms, but by the pressure against the inside surface of the glass of the spring stud attached to the inside depending arm.

These arms are attached to a guiding clamp adapted to ride on the wind shield frame, and are not supported by an adjustable twopiece bracket.

In operation the wiper arm and handle move back and forth with the guiding clamp, and do not oscillate describing an arc of a circle.

From my examination of the prior art, I find that all the essential elements of claims 1 and 6 of the patent in suit were old and well known to the art.

There are, however, two features which are novel, in that they do not appear in any prior patent in combination with all the other elements of claims 1 or 6 of the patent in suit, and which in my opinion constitute the invention of the patent in suit:

First, no one cleaner which was capable both of being removably fastened over the window frame and shifted longitudinally along the frame to clean the whole window, and also being removably adjusted at one fixed point, where it could be swung or oscillated about that point to clean or wipe only that portion of the window, had before that time been devised, but the cleaner devised by Beitman in the patent in suit was capable of doing both these things.

Second, the limitation to the unitary construction of the inside and outside members and transverse shaft is not found in claim 1, and is not expressly stated in claim 6, but I am of the opinion that it is fairly implied from the language of claim 6, wherein it says:

"Which shaft terminates at the outer side of the pane or screen in a depending arm which is spaced from the pane or screen, said shaft terminating

at the inner side of the pane or screen in a downwardly projecting lever which is spaced from the pane or screen and arranged substantially parallel with the aforesaid arm."

And the specifications and drawings of the patent in suit clearly show that the shaft, depending arm, and downwardly projecting lever comprise a substantially U-shaped metal rod, which rod, in order to make the shaft, has at the central portion a double right angle bend. The inside and outside arms have a spring tension toward each other, and are in spring contact with the glass, and thus the wiper is pressed against the outside of the glass. This element is not found in any other patent in combination with all the other elements found in claims 1 or 6 of the patent in suit.

The patent in suit has been held valid by Judge Westenhaver, in the District Court of the United States for the Western Division of the Northern District of Ohio, in the action of Beitman v. Strater, reported in 262 Fed. 443, and he apparently finds that one piece of metal forming both depending arms and the shaft last referred to is one of the essential elements of the patent in suit, because he says:

"The shaft and both depending arms are made up of the same piece of metal. * * * The inside depending arm is equipped with a wooden or rubber wheel or button at the lower end. This wheel, by means of a spring action of the two depending arms, is compressed against the wind shield, thereby procuring a frictional engagement of the elastic rubber strip with the front side of the wind shield. * * * *"

I agree with Judge Westenhaver that this is a border line case, and I am of the opinion that the novel features hereinbefore recited constitute invention, and not mere mechanical skill, but the patent must be limited to the exact construction therein shown. Judge Westenhaver also finds that the form of the plaintiff's commercial structure was simpler than any of those shown in the prior art, but I am not able to follow him in all his reasoning, because it seems to me that he is comparing the plaintiff's commercial structure with the prior art, whereas such comparison should be of the patent with the prior art.

If I am correct in my conclusion that the foregoing novel features are essential elements of the respective claims 1 and 6 of the patent in suit, then I am unable to find that there has been any anticipation, and the said claims are valid claims, limited as hereinbefore set forth.

We then come to the question of infringement. Both claims 1 and 6 of the patent in suit are for a combination, and, if any essential element of the said claims be lacking in the defendant's structure, there can be no infringement.

Claim 1 undoubtedly provides for the longitudinal bodily shifting of the cleaner to clean the whole window, and at the same time provides for a cleaner that may be fastened at one point and then be swung or oscillated to clean only a portion of the window. If this were not so there would be no invention, as a longitudinal bodily shifting of the cleaner, to clean the whole window, was old to the art, and a cleaner fastened at one point, that could be swung or oscillated to clean only a portion of the window, was likewise old to the art; but there was invention, because there was combined in the patent in suit the longitudinal bodily shifting of the cleaner to clean the whole win-

dow, and the fastening of the cleaner at one point, and then swinging or oscillating to clean only a portion of the window.

This element is not found in the defendant's structure, as in that structure the cleaner can only be fastened at one point, and by swinging or oscillating the cleaner a portion only of the window can be cleaned. The cleaner in defendant's structure cannot clean the whole window; therefore the first novel feature in the patent in suit is not found in the defendant's structure.

Claim 6 of the patent in suit omits all reference to the bracket being adjustable longitudinally of the edge of the window pane, and omits all reference to any oscillating movement, but it provides for a shaft and both depending arms made up of the same piece of metal. The spring tension towards each other of the downwardly depending arms brings the wiping element carried on the outside downwardly depending outside member in spring contact with the glass. This element is an essential element, as but for this there would be nothing to save this claim from anticipation; but this element is not found in the defendant's structure.

That this constitutes an important consideration in the determination of the question of infringement is apparent, when you consider the opinion of the Circuit Court of Appeals in the Sixth Circuit, in the case of Outlook Co. v. Presto Mfg. Co., which was reported in 267 Fed. 193, where a preliminary injunction was sought subsequent to the adjudication by Judge Westenhaver. In that case the Presto form of cleaner did not have the bracket or clip to go over the top of the frame of the wind shield, but it was agreed that the bracket was shown on the carton. It was of the clip type, that might be put on and taken off the wind shield readily. This cleaner, like the Clear Vision, carried a wiper both on the outside and inside arms, but the arms of the Presto cleaner were not of unitary construction. The arms were separated from the shaft, and were fastened thereto by nuts on the threaded ends of the shaft.

These wipers were held in contact with the glass by the spring action of the two depending arms, as were the wipers in the Clear Vision cleaner. The court denied the injunction and called attention to the fact that the construction used by the defendant did not involve a unity of transverse shaft and depending arms, upon which Judge Westenhaver placed some force in reaching the conclusion that the claims of Beitman embraced patentable invention.

The defendant's structure in the suit at bar is more readily differentiated from the patent in suit, because in it there is no unity of transverse shaft and depending arms, but there is a separate inner arm which is attached by a nut to the shaft, and an outer arm carrying a wiper which is held in contact with the glass, *not* by the co-operative spring action of the depending arms and shaft, nor even by the resiliency of the outer arm itself, but by a spring acting at a pivot in the outer arm. The defendant was taught nothing by the patent in suit, but its device follows the prior art, especially the Prickett patent, No. 942,743, supra, and all its essential elements are old to the art.

I therefore find that the defendant does not infringe claims 1 and 6 of the patent in suit, as I have construed the same.

[2] I will now consider the Williams patent, No. 1,422,158, claim 1 of which reads as follows:

"1. In combination, a shaft having a flattened portion, a crank having an aperture for the reception of the shaft, means encircling the crank and adjustable longitudinally of the same for engagement with the flattened portion of the shaft for retaining the crank against angular movement with respect to the shaft."

This is not a patent for an automobile wind shield cleaner, but is entitled "Means for Connecting Two Elements," and the patentee makes this clear in the following statement in the patent (page 1, lines 11–25):

"This invention relates to improved means for connecting two elements, as a crank or the equivalent thereof and a shaft or spindle designed to be rotated by the crank.

"In the present adaptation of my invention it is used for connecting an operating handle to the spindle of a windshield cleaner.

"The objects are to provide a comparatively simple and thoroughly efficient means of connecting two elements, as a crank or the like to a shaft or spindle, which connection may be quickly and conveniently made, is very strong, and is neat and attractive in appearance."

The device described in the patent is a four or five piece structure, which pieces are described as follows, to wit:  A shaft, *5*; an operating head, *11*; a handle or crank, *10*; a nut, *15*; and a ring or washer, *16*.  The patentee broadly claims that said Williams patent in suit, for "Means for Connecting two Elements," is applicable to any crank and shaft.  See patent in suit, page 1, lines 11–14:

"This invention relates to improved means for connecting two elements, as a crank or the equivalent thereof and a shaft or spindle designed to be rotated by the crank."

Defendant contends that all the essential elements of the said Williams patent in suit are old to the art, and function exactly as one skilled in the art would expect them to function, and that making in two parts that which had been made in one, or making in one that which had been made in two, did not constitute invention.

The defendant offered the following patents issued by the United States Patent Office to show the prior state of the art:

No. 981,948, issued to Josef Rosenthal, dated January 17, 1911, shows a holder for irradiating apparatus, and was cited by the Patent Office on the rejection of the original claims 1, 2, 3, 4, and 5 of the patent in suit.

No. 14,920, reissued to Lawrence H. Morse and James J. Tracy, dated July 20, 1920, shows a wind shield cleaner, and was cited by the Patent Office on the rejection of the original claims 1, 2, 3, 4, and 5 of the patent in suit.

The two last-mentioned patents were the only references cited by the Patent Office on the application for the patent in suit.

No. 436,220, issued to William H. Dodge, dated September 9, 1890, shows a scythe handle.  The blade is mounted on the shaft *A*, which has a flattened portion, the crank *B* has an aperture *b* for the reception of the shaft, and the crank is kept in engagement with the flat-

tened portion of the shaft and retained against annular movement with respect to the shaft by the nut $b'$, the thole $a$, and the washer $c$, which encircle the crank and are adjustable longitudinally of the crank.

No. 543,283, issued to George W. Bennett, dated July 23, 1895, shows a lock clamp for securing cranks to axles. The slightly reduced ends of the axle $A$ form shoulders against which the inside face of the crank $B$ comes in contact, the head of the crank is cut away at $b$ and has a screw-threaded prolongation $C$, which is reduced in size, leaving a surrounding shoulder $c$ which receives and supports the locking clamp $D$. This clamp is bored centrally and passes over the screw $C$, and is formed with a wing $e$, which fits the cut-away portion $b$ of the crank and extends slightly into the cylindrical hole $f$, which fits over the reduced end of the axle $A$, in which reduced end of the axle $A$ is formed a transverse groove or channel $g$, which is so located that when the parts are assembled the wing $e$ of the clamp $D$ will be within said groove and lock the crank. The axles, crank, and clamp having been properly assembled, a neat finish is made by the locking nut $E$ being screwed home on the screw-threaded projection $C$. Claim 1 of the Williams patent in suit seems to me to read directly on this device.

No. 583,860, issued to Eugene H. Olds, dated June 1, 1897, shows bicycle handlebar clip, and the patentee describes the elements of his invention as follows (page 1, lines 33–41):

"My invention comprises a spring metal clip stamped from a single piece of metal having its head provided with a transverse eye to receive the handlebar, and upon its lower end a solid screw-threaded portion adapted to receive a clamping collar and a holding nut, and provided with lateral slits to permit of a limited compression of said clip to conform to the size and contour of the handlebar."

The use of a wooden handle was contemplated by the patentee, and if the bar had been flattened, as the prior art then taught, the claim of the patent in suit would have read on this device.

No. 1,293,073, issued to Paul L. Fowler, dated February 4, 1919, shows a tool, and its object is described by the patentee in the patent as follows (page 1, lines 10–16):

"Has for one of its objects to provide a simply constructed implement with the abrading members in separable units clamped to a suitable handle and which may be independently detached or inserted to enable worn or impaired units to be replaced or sharpened."

This patent discloses every element of the alleged invention of the patent in suit and the claim reads directly on it. This will more clearly appear by making a comparison in which we will compare the words of claim 1 of the patent in suit with the number of the corresponding elements of this Fowler patent:

"A shaft" $10$ "having a flattened portion" $11$, "a crank having an aperture for the reception of the shaft" $15$, "means encircling the crank and adjustable longitudinally of the same" $17$ "for engagement with the flattened portion of the shaft" $18$ "for retaining the crank against annular movement with respect to the shaft" $21$.

It thus appears that all the elements of said claim of the patent in suit were old, and that they did not perform any new or different function, nor produce any different result, or the same result in a new or more efficient way than was shown in the prior art.

Plaintiff contends that all the prior art had at least four operative elements, and that the device of the patent in suit is distinguished from the references by having but three. With this contention I cannot agree, because it appears to me that the device of the patent in suit has four or five such elements, viz., a shaft 5, an operating head 11, a handle or crank 10, a nut 15, and the ring or washer 16.

If, however, the attempted distinction should be entitled to any consideration, then it can be properly claimed that the defendant's device has only three operative elements, viz., a crank and head, which are riveted together, a nut, and a shaft, and does not infringe the device of the patent in suit, but should be classed with the prior art.

[3] In my opinion, dividing a part or combining two parts does not avoid infringement, nor constitute invention, unless the change in the number of parts causes them to perform a new function. General Electric Co. v. Yost Electric Mfg. Co., 139 Fed. 568, 71 C. C. A. 552; Cordley v. Richardson Corporation (D. C.) 278 Fed. 683, affirmed (C. C. A.) 280 Fed. 515; Howard v. Detroit Stove Works, 150 U. S. 164, 14 Sup. Ct. 68, 37 L. Ed. 1039.

[4] There does not appear to me to be any merit in the attempted distinction by plaintiff's expert between the prior art and the patent in suit, based on a change of metal for wood, or wood for metal, nor would there have been, even if metal had been specified in the patent in suit as the material from which the parts were to be made. Wise Soda Apparatus Co. v. Bishop-Babcock-Becker Co., 240 Fed. 733, 153 C. C. A. 531.

I am not unmindful of the fact that the granting of the patent to plaintiff created a presumption in favor of its validity, but that presumption is easily overcome when you consider that the only references cited by the Patent Office were Rosenthal, No. 981,948, and Morse and Tracy, No. 14,920, and all the other pertinent references hereinbefore analyzed were omitted.

Plaintiff makes much of its claim of commercial success, but I do not see that there is much force to that claim, first, because it is only in cases of doubt that commercial success can be considered as a factor, and I have no doubt with reference to the Williams patent in suit; and, secondly, because, even if I was in doubt as to the validity of the patent, I am not convinced that the plaintiff has shown that its commercial success has been achieved by the use of the Williams patent in suit.

I am unable to find any novelty or invention in the Williams patent in suit. In my opinion claim 1 of the Williams patent in suit, No. 1,422,158, is invalid.

A decree may be entered in favor of the defendant against the plaintiff, dismissing the bill of complaint, with costs. Settle decree on notice.