## SMITH v. AMERICAN ELECTRIC RABBIT RACING ASS'N, Inc., et al.

District Court, E. D. Louisiana, New Orleans Division. July 23, 1927.

No. 18596.

1. Patents ⟨⟨=⟩236(3)—Transposition of a part does not prevent infringement.

Infringement cannot be escaped by mere transposition of a part.

2. Patents ⟨⟨=⟩246—Omission of one element of combination patent does not avoid infringement, where equivalent is substituted.

Mere form not being of the essence of the invention, infringement of patented combination is not escaped by omission of one element; an equivalent well known at date of patent as proper substitute being substituted.

3. Patents ⟨⟨=⟩91(4)—Combination invention held not pioneer because first successfully putting an amusement on a commercial basis.

One is not a pioneer, though he was the first inventor who successfully put dog racing on a commercial basis; his combination invention not performing a function never performed by any earlier invention, but merely performing that function in a substantially different way from any preceding invention.

4. Patents ⟨⟨=⟩246—Infringement is not avoided by omission of two elements; they being united into one integral part in the infringing device, and performing the same function.

Omission of two elements of a patented device does not avoid infringement, when they are united into one integral part in the claimed infringing device, and the united part there performs the same function in substantially the same way as the omitted parts, even though it also performs another function.

5. Patents ⟨⟨=⟩178—Improvement patent substantially advancing the art is entitled to liberal construction, with range of equivalents commensurate with scope of invention.

A combination patent, merely an improvement, where substantially advancing the art, is entitled to liberal construction, with a range of equivalents commensurate with the scope of the invention.

6. Patents ⟨⟨=⟩328—1,379,224 for lure conveyer arm for dog-racing device held infringed, notwithstanding omissions, in view of substituted equivalent.

Infringement of Smith patent, No. 1,379,-224, for a lure conveyer arm for a dog-racing device, held not avoided by omission of arm-supporting wheel and hinge; there being a substitution of a known mechanical equivalent by rigidly attaching the projecting lure-carrying arm to the conveyer car.

**7. Patents ⊜⟶328—1,507,440 for housing of tracks for dog-racing device held infringed; equivalents being substituted for omitted parts.**

Smith patent, No. 1,507,440, for housing of conveyer car and tracks for dog-racing device, *held* infringed, notwithstanding omission of adjustable metal truss rod or stay rod roof and open side support; the substituted 2x4 truss or stay members being well-known mechanical equivalents.

**8. Patents ⊜⟶178—Wide range of equivalents may be claimed by inventor of first dog race starting device.**

Inventor of dog race starting device is justified in claiming a wide range of equivalents; the prior art showing no dog race starting devices.

**9. Patents ⊜⟶328—1,507,439 for dog race starting device held infringed, notwithstanding change of material of walls and place where divergent members end.**

Infringement of Smith patent, No. 1,507,-439, for a dog race starting device is not avoided, either by substituting for the claimed "walls of wire mesh partially covered with fabric" of board walls, there being no difference in function and operation but the substitution merely impairing efficiency, or by any change of location of the outer ends of divergently upward extending members, they being practically identical with those of the patent, and functioning in substantially the same way to obtain the same results.

In Equity. Suit by Owen P. Smith against the American Electric Rabbit Racing Association, Incorporated, and others for infringement of patents. Decree for plaintiff.

McCaleb & McCaleb and E. Howard McCaleb, all of New Orleans, La., for complainant.

T. Hart Anderson, of New York City, and Hugh S. Suthon, of New Orleans, La., for respondent Heintz.

W. J. Gex, of Bay St. Louis, Miss., Curtis & Hall, of New Orleans, La., and Browne & Phillips, for respondents New Orleans Kennel Club, Inc., Rennyson, Cody, Jr., and Passera.

BURNS, District Judge. The original plaintiff, Owen P. Smith, died during the pendency of these infringment proceedings. His widow, as administratrix, was substituted. For convenience, the issues will be discussed in his name.

Smith first claimed infringement of six patents on dog-racing devices, but withdrew three, leaving three at issue, viz.: Patent No. 1,379,224, which is general in its scope and covers the lure conveyer arm which projects horizontally from the rail track through a continuous opening in the side of the conveyer housing; No. 1,507,439, which covers the starting cage; and No. 1,507,440, which covers the housing or casing over the conveyer rail track.

These devices are susceptible of separate use, though used conjointly. They are designed to induce dogs to race after a mechanically conveyed dummy rabbit or lure projecting into the race course and moving at a speed of 40 or more miles per hour ahead of the dogs. Smith alleges that the defendants, including G. W. Heintz, who prior to 1925 was in his employ in the making, use, sale, and exploitation of his inventions, infringe the patents on these devices; that the said Heintz is doing business in the name of the American Electric Rabbit Racing Association; that he conspired with the other named defendants in organizing the New Orleans Kennel Club, Inc., by means of which corporation the said defendants did make, use, sell, and lease unlawfully devices and apparatus embodying the inventions covered by plaintiff's letters patent.

Patent No. 1,379,224 comprises four claims.[1]

---

[1] Smith patent, No. 1,379,224:

"1. In a dog-racing amusement, a race course suited for dogs, a casing extending around the outer side of the race course and provided with a longitudinal opening, a mechanical conveyor including a track extending around the race course and located within the casing, and a conveyer car mechanically operated upon said track and provided with an arm extending through the longitudinal opening of the casing in a projecting position over the track and adapted to carry a lure, and a wheel rotatably mounted on and supporting the arm at the projecting end thereof.

"2. In an amusement, the combination of a race course suited for dogs, a covered rail track adjacent said course on one side, a conveyer car mechanically operated upon said track, a horizontally extending arm hinged to said car extending midway of said course, a wheel rotatably mounted near the end of said arm, and resting upon the ground, a platform supported by said arm and a lure or quarry mounted upon said platform for attracting the dogs.

"3. In a dog-racing amusement, the combination of a race course suited for dogs, a housing adjacent said course on one side having an opening in the side toward the course, a rail track within said housing, an electrically operated car within said housing for operation upon said rail track, an electric conductor within said housing, a shoe carried by the car for contact with said conductor, friction brakes, adjacent the wheels of said car, means for holding said brakes out of contact with said wheels, means on the track for releasing said brakes, a hinged arm extending horizontally from said car through the opening in the side of the housing, a wheel mounted upon said arm for rotation

These claims were allowed by the Patent Office after the rejection of broader claims predicated upon prior patents for similar devices, the earliest of which was Pinard (1887), covering a device for testing the speed of hounds, those of Moss (British, 1896), of Walsh (1898) and of Everett (1912), all covering race tracks for dogs.

The Pinard patent included the dragging of a dummy hare or lure fastened to a plate, which was attached to a long cord, the other end of which was wound about a wheel or drum, operated by a hand crank like a windlass, the winding of which would drag the dummy lure over the ground at the desired speed ahead of the animals.

The Walsh patent comprised a continuous track or race course for dogs, a vertically inclined projecting arm over said track supporting a dummy lure, in view of the dogs, which was conveyed by a mechanical or motor car on a rail track parallel and adjacent to the race course, being separated by a fence to prevent the dogs being distracted by the conveyer car and going upon the conveyer rail track.

The Everett patent comprised an underground cable, running in a V-shaped casing, to which was attached a vertically inclined stem or supporting arm, projected above the surface of the race course, conveying a lure as the cable was driven by motor at the desired speed; the lure being projected upon and carried along the course and back into the casing by mechanical means.

The Moss patent (British) comprised similarly a track, a race course, a mechanical conveyer, and trolley system with a hood over the trolley wire. The fencing, tunnel, hood, or housing in each case was designed primarily to avoid distracting the attention of the dogs from the lure to the conveyer and protect them from contact therewith.

The elements and operating principles of these devices, viz. an oval or round race course, an adjacent underground or parallel rail track, a mechanical conveyer, a stuffed hare or dummy lure, a conveyer arm supporting same, a fence between the course and the conveyer rail track or housing over same, are variously contained in the Smith combination, except that the projecting horizontally inclined arm extending out of the continuous longitudinal opening in the conveyer housing was a feature which advanced the art substantially and was therefore of real merit. This was the novelty of his combination.

The defendants are licensees of W. C. Creveling, under his patent No. 1,481,313 for an animal racing track, which was granted three years after Smith's. It comprises nine claims.[2]

---

upon the ground, a platform also mounted upon said wheel and a lure mounted upon said platform.

"4. In a dog-racing amusement, a race course suitable for dogs to race upon, a covered two rail track along one side of said course having a lateral opening on the side towards said course, a mechanically operated car for operation upon said track, an arm carried by said car extending through said opening, a wheel support for said arm resting upon said course, a decoy or lure mounted upon said arm, a spring for holding said wheel in contact with the ground, brake mechanism adjacent to the wheels of the car, a trip along said track for releasing said brakes, springs for applying said brakes to said car wheels, when so released, a shoe carried by the car in proximity to the roof of said covering, for engagement with said roof whenever the car rises off the track rails, rings depending from the car and hooks at the end of the spur track for engaging the rings and stopping the car."

---

2 Creveling patent, No. 1,481,313:

"1. A racing apparatus of the character described comprising an endless race track, an endless conveyor track within the area defined by the race track, a slotted housing for the conveyor track, a car movable over the conveyor track and within the housing, a lure-supporting arm, a horizontally arranged movable member pivotally mounted on the car and having said arm rigidly connected therewith, a latch on the car adapted to be engaged with said member to lock the latter in the operative position of the lure, a trip member adapted to engage said latch to release said member, and means connected with said arm and car adapted to automatically retract the lure from the track to an inoperative position.

"2. In a racing apparatus of the character described, a race track, a conveyor track, a housing for the conveyor track, a car movable over the conveyor track, and a lure-sustaining arm movably supported on the car to occupy an extended position in which the lure is disposed in the race track, a lock for said arm in said position, means for releasing said lock, and a device connected with said arm and a member on the body of the car automatically acting to place said arm in a retracted position in which the lure is withdrawn into the housing.

"3. In a racing apparatus of the character described, a race track, a conveyor track, a housing for the conveyor track, a car movable over the conveyor track, a lure-sustaining arm movably supported on the car to occupy an extended position in which the lure is disposed in the race track and a retracted position in which the lure is withdrawn into the housing, means for normally urging the arm to the retracted position, means for retaining the arm in extended position, and means for releasing said retaining means to effect a retraction of said arm at a predetermined point within the race track.

"4. In a racing apparatus of the character de-

These claims were allowed Creveling by the Patent Office after repeated rejections and amendments. All of his original claims 1 to 6 had been rejected on Smith's patent, No. 1,379,224, and on Everett. The Creveling patent was thereby reduced to this real invention, which comprised the horizontally arranged movable member pivotally mounted on the car and having the lure supporting arm rigidly connected therewith and having a locking or latching device adapted to automatically retract the arm to an inoperative position; the purpose of the device being to conceal the lure in the conveyer housing after the race.

The defendants admit that the apparatus they are using includes all the elements in Smith's combination covered by his claims 1 and 2, except that their conveyer rail track and housing is not placed around the outer side of the race course, and except that they omit the element of Smith's claims 1 and 2, consisting of "a wheel rotatably mounted on and supporting the arm at the projecting end thereof," and omit hinging the arm to the car. By these alleged omissions they claim to have averted infringement.

The question presented is whether the defendants actually omit an element of Smith's patent, which is a combination patent of elements all known to the prior art, and thereby avoid infringement; or do they merely transpose one element, viz. by merely changing the location of the conveyer, rail, track, and housing from the outer to the inner side of the race course, and substituting for the arm-supporting wheel and hinge a known mechanical equivalent by rigidly attaching the projecting lure-carrying arm to the conveyer car.

Smith's attorney concedes that his combined elements, in every ingredient, must have been used by the defendants to sustain the charge of infringement. In this respect the case is similar to Dry Hand Mop Co. v. Squeez-Ezy Mop Co., 17 F.(2d) 465–466 (5th C. C. A.).

[1] My conclusion as to the first alleged omission is that, in merely transposing the conveyer rail and housing from the outer to the inner side of the race course, the defendant cannot escape the charge of infringement of that element of claims 1 and 2 which provides for the location thereof either "around the outer side of the race course" or "adjacent said course on one side." It is plainly not an omission of an element of the combination, but it is a mere substitution of one location for another. They have merely transposed the position of the conveyer car and track housing from the outer side of the race course to the inner side, or

scribed, a car, a lure-supporting arm movably sustained on the car to occupy either of two extreme positions, means for urging the arm to one extreme position, means for retaining the arm in the other extreme position against the action of said urging means, and means disposed in the path of movement of said retaining means for releasing the latter to permit said arm to respond to the action of said urging means.

"5. In a racing apparatus of the character described, a car, a lure-supporting arm movably sustained on the car to occupy either of two extreme positions, means for urging the arm to one extreme position, means for retaining the arm in the other extreme position against the action of said urging means, and a trip disposed in the path of movement of said retaining means movable to occupy tripping and non-tripping positions with relation to said retaining means.

"6. In a racing apparatus of the character described, a car, a stationary member sustained on the car, a movable member mounted on said stationary member, a lure arm fixed to the movable member, means for urging the arm and movable member to one extreme position, a latch for securing the movable member in another extreme position against the action of said urging means, and a trip adapted to be engaged by said latch for moving the latter to released position with respect to the movable member.

"7. In a racing apparatus of the character described, a car, a disc fixedly secured to the car,

a second disc movably sustained on the first disc, an arm fixed to the movable disc, a spring associated with said arm for urging the latter to one extreme position, a spring latch engageable with said discs for retaining the arm in urged position, a gravity latch engaging the discs for securing the arm in another extreme position against the action of said spring, and a trip for moving the gravity latch to release said position.

"8. A racing apparatus of the character described comprising an endless race track, a conveyor track within the area defined by the race track, a car movable over the conveyor track, a lure-supporting arm sustained on the car for movement over the race track, a latching device for said arm in the operative position of the lure, means for releasing said device and means connected with said arm and the car adapted to automatically retract the arm to an inoperative position for the lure.

"9. A racing apparatus of the character described comprising an endless race track an endless conveyor track within the area defined by the race track, a car movable on said conveyor track, a housing on the conveyor track, said housing having a passage in its side, a lure-carrying arm rotatably mounted on the car, said arm being movable in opposite direction in said passage, a lock for said arm in the operative position of the lure, means for releasing said lock, and means for automatically retracting said arm to an inautomatic position of said lure in said housing."

from the right-hand side to the left. Infringement cannot be escaped by a mere transposition of a part. Devlin v. Paynter, 64 F. 398, 400 (3 C. C. A.); International Time Recording Co. v. Bundy Recording Co. (C. C. A.) 159 F. 464, 469; Walker (5th Ed.) 348.

[2] With regard to the omission of the Smith element, "a wheel rotatably mounted on and supporting the arm at the projecting end thereof," and the hinging of the arm to the car at the inner end, it is necessary to determine whether the general rule or its alternative or exception applies to this feature of the case. The rule was applied in the Mop Case, supra. It is stated as section 349 in Walker on Patents (5th Ed.):

"Omission of one element or ingredient of a combination covered by any claim of a patent averts any charge of infringement based on that claim, whether or not the omitted ingredient was essential to the combination of the patent, and whether or not it was necessary to the operativeness of the machine."

The rigidity of this rule is relaxed, however, by recognized exceptions, in which it has no application as to anything which depends upon a particular form for patentability. Section 350 states further:

"No substitution of an equivalent, for any ingredient of a combination covered by any claim of a patent can avert a charge of infringement of that claim, whether or not the equivalent is mentioned in the patent."

Rees v. Gould, 15 Wall. (82 U. S.) 187, 21 L. Ed. 39, is also authority for this alternative rule that the withdrawal of one ingredient in a patented combination and the substitution of another, which was well known at the date of the patent as a proper substitute for the one withdrawn, is a mere formal alteration of the combination, and if the ingredient substituted performs substantially the same function, such a substitution of the one for the other will not avoid the charge of infringement. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935, is to the effect that, except where mere form is of the essence of the invention, the court should consider the devices or elements in the light of what they do or the function they perform and how they perform it, and find that one thing is the same as another if it performs substantially the same function in substantially the same way to obtain the same result.

The immediate problem is to determine Smith's range of mechanical equivalents, since the omission of the wheel and hinge will avert the charge of infringement unless the rigid attachment of the arm to the conveyer car is a substituted equivalent.

[3] I do not agree with the view that Smith is a pioneer because he was the first inventor who successfully put dog racing on a commercial basis. Smith's combination invention is not a primary invention. It does not perform a function never performed by any earlier invention. It falls more nearly into the class of secondary inventions as these are defined by Walker (5th Ed.) at pages 443, 444. It performs a function performed by some earlier inventions, but performs that function in a substantially different way from any that preceded it. After a study of the decision in Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122, Walker (section 359, pp. 441, 442) considered the law to be:

"That an inventor is entitled to a range of equivalents commensurate with the scope of his invention. The old distinction between primary and secondary patents in respect to range of equivalents, if such distinction ever really existed, has been eradicated."

Authorities are abundantly cited in the Mop Case, 17 F.(2d) 465, cited supra, by the Circuit Court of Appeals, and defendants cite others to the effect that claims containing self-imposed limitations are not infringed by structures which omit them; that a claim in a patent may not be likened to a nose of wax, which may be turned and twisted in any direction, by merely referring to the specification so as to make it include something more than, or something different from, what its words express; that, where the terms of a patent are clear, the patentee is bound by it; that the "claim," in patent procedure, is a statutory requirement prescribed for the very purpose of making the patentee define precisely what the patent is; that he cannot claim equivalency based upon an element that he has been required by the Patent Office to abandon in order to secure his patent, though he may otherwise rely on it; that, where he limits his claim to the precise construction shown and described, he cannot hold as an infringer one who uses a different construction; that, in a combination patent for an improvement in the arrangement or adaptation of old elements, the inventor is not entitled to a broad interpretation of the doctrine of mechanical equivalents so as to cover a device not specifically included in his claim and specification. Burns v. Meyer, 100 U. S. 671, 25 L. Ed. 738; White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303; Keystone Bridge Co. v. Phœnix Iron Wks.,

95 U. S. 274, 24 L. Ed. 344; Roemer v. Peddie, 132 U. S. 317, 10 S. Ct. 98, 33 L. Ed. 382; Morse Chain Co. v. Link Belt Co. (C. C. A.) 189 F. 587; Fay v. Cordesman, 109 U. S. 408, 3 S. Ct. 236, 27 L. Ed. 979; and Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121, cited in Hardison v. Brinkman (C. C. A.) 156 F. 962. All of these decisions, however, are but so many declarations of the general rule and its application to particular cases.

In the instant case, the defendants admit a substantial copying of all of Smith's combination except for the alleged omission of the hinge and wheel.

Since Creveling's patent was restricted to the mere retracting device designed for the concealment of the lure in the conveyer housing when in an inoperative position, it is wholly unrelated to the operating function of the arm itself. Smith's specifications show that his apparatus effected the function of concealing the lure at the end of the race by passing it into a den, where the conveyer tripped a latch closing a door against the admission of the pursuing dogs. It is plain that this feature of both apparatuses has no bearing on the issue, which involves the operation or use and function of the lure-carrying arm; that Creveling's patent consists entirely of this novel retracting device, which is an unrelated addition, irrelevant to the issue.

[4] Addition to a patented machine or manufacture does not enable him who makes, uses, or sells the patented thing, with the addition, to avoid a charge of infringement. Walker, § 347, citing Western Electric Co. v. La Rue, 139 U. S. 607, 11 S. Ct. 670, 35 L. Ed. 294. Nor does omission avoid infringement when two elements are united into one integral part if the united part performs the same function in substantially the same way. If it performs the same function, the fact that it also performs another function is immaterial to the question of infringement. Walker (5th Ed.) §§ 352, 376, and cases cited in footnotes. See specially King County Raisin & Fruit Co. v. U. S. Consol. Seeded Raisin Co. (C. C. A.) 182 F. 59.

[5] It is precisely the "laterally or horizontally inclined lure-carrying arm projecting through the continuous longitudinal opening in the conveyer housing" that distinguished Smith from all predecessors, and he is not anticipated by the preceding paper patents. 182 F. 59, supra. In both apparatuses it is this feature or element that not alone gave novelty to Smith but constituted his actual invention, his idea, that turned all

prior failures to success, quoad which Creveling's patent is irrelevant. It was the discovery that very substantially advanced the art, though he was only an improver and not a pioneer or primary inventor. His combination produced a structure which actually and successfully inaugurated a new amusement or industry. Vacuum Co. v. Sexton (C. C. A.) 239 F. 898. For this reason he is entitled to a liberal construction, with a range of equivalents commensurate with the scope of his invention. Eibel Process Co. v. Minn. & Ont. Paper Co., 261 U. S. 63, 43 S. Ct. 322, 67 L. Ed. 523. A reading of his claim in the light of his specifications does not suggest an intention to restrict himself to the use of the wheel and hinge on the projecting arm, which might well have been rigid instead of flexible as far as function and operation were concerned. There is nothing to show his intention to relinquish to the public all forms in which his invention might be embodied. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Western Electric Co. v. La Rue, 139 U. S. 601, 11 S. Ct. 670, 35 L. Ed. 294; Hoyt v. Horne, 145 U. S. at page 309, 12 S. Ct. 922, 36 L. Ed. 713.

The rule in Rees v. Gould, 15 Wall. (82 U. S.) 187, 21 L. Ed. 39, seems to be applicable, because the extended arm, inclined variously, but rigidly attached to the conveyer, was well known in the art before either Smith's or Creveling's patent. The rule was there stated thus: Unquestionably the withdrawal of one ingredient in a patented combination and the substitution of another, which was well known at the date of the patent as a proper substitute for the one withdrawn, is a mere formal alteration of the combination; and, if the ingredient substituted performs substantially the same function as the one withdrawn, such a substitution would not avert the charge of infringement.

[6] As I appreciate the mechanical values here, the lateral horizontally inclined lure-supporting arm performed the same function in both cases, each in the same way. The rotatably mounted wheel at the outer end was the mere complement of the hinge on the conveyer at the other. Omitting the hinge, the wheel was unnecessary. Adopting rigidity at the inner end of the arm by omitting the hinge was a mere formal alteration. In this I am guided also by what the Supreme Court said in the Machine Co. v. Murphy Case, cited supra: The court or jury are not to judge about similarities or differences by the names of things, but are to look at the machines or devices, or elements in the light

of what they do or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another if it performs substantially the same function, in substantially the same way to obtain the same result—cited and followed in Yancey v. Enright (5 C. C. A.) 230 F. 641, 646.

Here Smith successfully combined known elements. The substantial advance he made in the art resulted principally from his adaptation of a horizontally inclined lure-supporting arm projecting out of a longitudinal continuous opening in the conveyer housing; the general principles and construction of which were known and used variously in elevated street railway systems for housing, concealing, and protecting third rails, and otherwise in various other industries, as appears from the exhibits showing the prior state of the art. But Smith introduced the combination to the art of dog racing. Within the narrow confines of that particular art or field of activity he is entitled to a liberal consideration as an inventor, and to actual protection of his rights against deliberate invasions on the part of others. The object of the patent law, according to Walker (section 185), is to secure to inventors a monopoly of what they have actually invented or discovered, and it ought not to be defeated by a too strict and technical adherence to the letter of the statute, or by the application of artificial rules of interpretation. Consol. Paper Bag Case, cited supra.

In Consolidated Valve Co. v. Crosby, 113 U. S. 157, 179, 5 S. Ct. 513, 525, 28 L. Ed. 939, 946, the Supreme Court said that the inventor there had "brought to success what prior inventors had essayed and partly accomplished. He used some things which had been used before, but he added just that which was necessary to make the whole a practically valuable and economical apparatus. * * * And the speedy and extensive adoption of Richardson's valve are facts in harmony with the evidence, that his valve contains just what the prior valves lacked, and go to support the conclusion at which we have arrived on the question of novelty. When the ideas necessary to success are made known, and a structure, embodying those ideas, is given to the world, it is easy for the skillful mechanic to vary the form by mechanism which is equivalent, and is therefore, in a case of this kind, an infringement."

In section 351, Walker says that combination patents would generally be valueless in the absence of a right to equivalents, for few combinations now exist or can hereafter be made which do not contain at least one element an efficient substitute for which could readily be suggested by any person skilled in the particular art. Thrall v. Poole (C. C.) 89 F. 721.

The facts of record here make this doctrine applicable to this case. Creveling's later contribution to the art, of a pivotal disc device on the conveyer by which the arm is automatically retracted from an operative to an inoperative position, does not alter the fact that mere rigidity was substituted for vertical flexibility in the arm itself. The element of novelty in Smith consisted of the lateral or horizontal arm projected out of the continuous opening of the housing. I repeat it was this idea that made the combination successful. It was the difference between Smith's success and the failure of his predecessors. It was then easy for a skilled mechanic to substitute a known equivalent for an omitted element when attempting to evade a charge of infringement. Walker (5th Ed.) 350, 353; Bundy Mfg. Co. v. Detroit Time Register Co. (C. C. A.) 94 F. 524, 538. See, also, Miller v. Eagle Mfg. Co., 151 U. S. 208, 14 S. Ct. 310, 38 L. Ed. 121. The claim of the patentee should be liberally construed and applied, if that is necessary, to uphold and not destroy his rights as an inventor by the deliberate evasions of the infringer. Walker (5th Ed.) § 185.

Under the circumstances, I am of the opinion that the defendants cannot avert the charges of infringement by the alleged omission of the wheel and hinge, because of the substituted equivalent.

[7] Patent No. 1,507,440 relates to the housing of the conveyer car and tracks, and resulted from a suggestion of the Patent Office Examiner when Smith's No. 1,379,224 was under application. This is also a combination patent. The claims allowed show the following elements in combination:

In a continuous housing for concealing a rail track and conveyer car having a laterally extending arm operated upon said track; (1) posts set in ground at the sides of said track; (2) timbers attached to said posts to form a frame; (3) boards attached to said timbers to form a continuous inclosure above said track and housing; and having (4) a continuous opening in one side of said housing adapted to permit extension of the laterally extending arm; (5) truss rods attached to the closed side of the housing adapted to support the side of said housing above the said continuous opening.

Claim 2. In a continuous housing for

concealing a rail track and conveyer car having a laterally extending arm; (1) posts on either side of the track; (2) timbers attached to the upper and lower ends of the posts to form a frame; (3) upper timbers being inclined upwardly; (4) adjustable stay rods connecting the upper ends of the posts to support the inner side of the wall frame; (5) boards attached to the frame to form a covering; (6) one side of the covering having a continuous opening therein through which the arm extends.

Claim 3 is practically the same except that it provides for "screw threaded adjustable stay rods secured to the upper ends of the outer post and supporting the inner post therefrom."

The defendants deny infringement by their construction, which omits the truss or stay-rod element of each claim, or any equivalent thereof, and has no stay or support connected to the upper ends of the posts. No pretense is made by defendants to a patent for their construction. The plaintiff says it is a mere Chinese copying of its claim No. 1. He offers expert witnesses who say that the 2x4 braces of defendant are an equivalent substitute for plaintiff's stay or truss rods; that these wooden braces are adjustable, though nailed to the housing frame timbers, because they may be removed and renailed if necessary. Defendants' expert witnesses claim the contrary, viz. that, whereas the stay or truss rods of plaintiff may be operated to adjust the alignment of the roof by screwing the turnbuckles thereon, the defendants would be required to dismantle the roof of theirs by knocking or prying the wooden braces loose to make an adjustment and renail them in place. The defendants finally contend that they have employed the common, ordinary workman's expedient of bracing the roof timbers, in no sense operating to produce the result of the adjustable truss or stay rods of the Smith patent; that, in considering the question of equivalency, the court should bear in mind the claims which the plaintiff tried to get, but which the Patent Office required him to surrender, and which were eliminated by amendment.

I have examined the file wrapper with reference to the Bertram patent, No. 729,120, which covered a third rail electric railway device comprising housing for the third rail device. The rejection of Smith's original claims 1 and 3 on Bertram were made on the ground that the contact carriage in Bertram was considered the equivalent of Smith's conveyer car. His claim 4 was rejected on

Bertram, as "there would be no invention involved in placing a door on Bertram's cover." Other claims were rejected merely as vague and indefinite. Smith's acquiescence in these rejections does not justify defendants' contention that the adjustable truss or stay-rod element in each of the allowed claims is essential, and that under claims 2 and 3 it is essential that the adjustable stay rods be connected to the upper ends of the posts.

The file wrapper, considered in the light of the various electric railway third rail housing, conduit, and cover devices, exhibited in the record to show the prior state of the art, satisfies me that Smith's application of the known principles to his housing device in the art or field of dog racing was a novelty. In the Examiner's letter of February 28, 1922, rejecting Smith's claims, the first criticism was that his drawing was blurred, some words were misspelled, and some typographical errors to be corrected. The most important paragraphs read:

"The claims are rejected as indefinite and as aggregations.

"The same objections occur in each claim, and, taking claim 3 as an example: The opening in the side of the housing has been claimed positively. 'A continuous opening' cannot be made a positive element of a claim, an opening is intangible and in the present claim the housing should be described as 'having' or 'provided with a continuous opening in one side of said housing.' * * *

"Further, no relation exists in the claim between the various parts nor has the relative location of the parts been defined. The claim fails to state the functional dependence between the car and the side of the housing having the continuous opening. It is suggested that in line 2, after 'car' the phrase *'having a laterally extending arm'* be inserted. Line 4 should be amended to describe the side having the continuous opening as having such opening *for the laterally extending arm.*"

Certainly there was nothing in this to indicate that Smith was being bound like Prometheus to his adjustable truss rods as essentials. To the contrary, the letter concludes with what seems to me a very significant statement by the Examiner:

"The claims, if amended as required above, would probably be allowable in view of the present state of the art."

Why did he say that? What was the then present state of the art of dog racing. The exhibits show that there was no such housing

then extant. The Bertram housing and all others were used in reference, it seems to me, simply because they exhibited the principle upon which such housings were built. If Smith had extended the roof beams or rafters beyond the king posts on the rear solid wall and knee-braced their projecting ends by truss or stay rods or wooden 2x4 timbers, as the defendants have done, there was then no reference which might have been cited against him in the prior art.

The meticulous search of technical definitions of truss rods, stay rods, and braces by lexicographers exhibited in the briefs, and those from expert witnesses at the trial, with the lawyers' arguments superadded, tend to confound confusion over simple mechanical devices that find equivalents in everyday carpentry. Stripped of irrelevancies, the adjustable stay rods or truss rods, as applied by the plaintiff to this wooden box structure, attached to and using the rail track and crossties for a fourth side and bottom, are truss members, or tension braces. The wooden 2x4 braces, knee braces, or whatever else they may be called, used by the defendants, are also truss members or tension braces. Both substantially perform in substantially the same way the same function and obtain the same result, viz. sustain the weight of the side of the box or housing containing the "continuous longitudinal opening" to permit of the free passage of the laterally or horizontally extended lure-carrying arm of the conveyer car. Bearing in mind that it was precisely the laterally or horizontally extended lure-carrying arm, projecting out of the continuous longitudinal opening of the conveyer housing that gave novelty to and constituted the idea of Smith which substantially advanced the art, this "continuous opening" in one side of said housing, adapted to permit the extension of the laterally extending arm, is the complementary component of the arm itself, and comprises one-half the value of the idea by which Smith substantially advanced the art. The fact that the level of the opening and roof might be adjusted more easily or readily by the turnbuckles on the metal rods than by detaching and renailing the wooden braces of defendant is of minor importance. The evidence does not indicate how often, if ever, the vibration of the conveyer car, the weather, or the settling of the soil might necessitate such adjusting. The method of bracing is comparatively nonessential, notwithstanding the method of bracing is defined as an element of the combination patent and must be considered here. This consideration, however, must proceed upon the same principles and in the light of the same authorities as those hereinabove reviewed with reference to patent No. 1,379,224, and it leads to the same result. The defendants, who make no pretense to patent rights on the housing, have copied the rail conveyer housing of Smith's patent, No. 1,507,440, omitting the adjustable metal truss rod or stay rod roof and open side support, but have substituted wooden 2x4 truss or stay members which are in fact well-known mechanical equivalents, and cannot thereby avert the charge of infringement.

The third Smith patent, No. 1,507,439, is the dog race starting device, consisting of a wooden box or cage, having a plurality of stalls, each dog having a separate stall, with a separate rear entrance door, pending its release from the cage by the raising of a single front exit door common to all the stalls extending across the front of the cage. The stalls and exit door are designed to release all the dogs simultaneously. The simultaneous release of the dogs by the exit door is effected by the uplifting of the door by means of its hinges and springs. The device is covered by a single claim.[3]

Here again the defendants, without pretense of invention, admit copying Smith's combination device, but claim omission of two elements.

[8] The record justifies the plaintiff's attorney in claiming a wide range of equivalents on this apparatus or device, even though it be a combination of known elements. The file wrapper discloses rejection of broad claims originally made by Smith, covering elements known to the prior art, but these were all in horse race starting devices, whereas the art discloses no dog race starting devices.

[9] The first omission claimed in defense is

---

[3] Smith patent, No. 1,507,439:

"In a starting cage for racing dogs, a frame comprising a boxlike structure divided into a plurality of compartments and comprising walls formed of wire mesh partially covered with fabric, individual rear doors for each of the compartments and a single front door hinged at its upper end to the top walls of the frame, divergent inclined members secured to the top of the said frame and extending upwardly and outwardly beyond the face of the front door and having their outer ends in the plane of the side walls of the boxlike structure, springs secured to the outer ends of said inclined members and to the doors and lying in the plane of the hinges, and a latch at the bottom of the cage for coaction with the lower edge of the front door to hold the front door normally closed against the tension of said springs, said springs adapted to raise the front door upon release of the latch."

the element, "walls formed of wire mesh partially covered with fabric." In the defendants' apparatus the stalls or compartments are divided by walls formed of tongue and groove boards. This they say is not a substituted equivalent; that the only way the board walls act like the fabric covered wire mesh walls of Smith is that they divide the stalls; otherwise they are different, because in the Smith apparatus the walls are yielding, they are padded to protect the skin of the dogs from injury, they admit light and permit air circulation, and the dogs can see each other and see outdoors; and therefore, being different in "function and mode of operation," there can be no equivalency. The short answer seems clear enough, viz. that there is no difference at all in function and mode of operation, since the simple function is to separate the dogs. It is but a fair presumption that they would otherwise conduct themselves in ordinary canine fashion. Indeed, except for the difference in material, which probably makes a difference in safety and comfort for the animals, and a difference in the weight of the apparatus, which is comparatively a negligible consideration, there is no substantial difference whatever.

An examination of the Smith file wrapper discloses that the material composing the walls was nowhere called in question. Certain of his original claims on the starting device were rejected on old race horse starting devices, but this element, prescribing material for the walls, continued from first to last. In the original claim No. 1 it read: "Wire mesh upon said frame, fabric covering a portion of said wire mesh." In the claim as finally allowed it reads: "Walls formed of wire mesh partially covered with fabric." Smith declared in his specifications his object in selecting the material. This declaration is independent of, and I think more reliable than that of the witnesses who testified at the trial after giving rein to their imagination. He declared it was "to provide means of protecting the dogs against injury in the cages."

The defendants therefore have merely substituted wood for the omitted wire mesh covered with fabric. This may have impaired the efficiency of the device, but it made no difference in the function or result sought to be accomplished. The law is that a change of material in a structure like the present one is not an invention. It is well within the adaptation of any mechanic. Wise Soda Apparatus Co. v. Bishop-Babcock-Becker Co. (C. C. A.) 240 F. 733. The substitution of wood for metal or vice versa is not alone sufficient to differentiate a patented article from the prior art. Outlook Co. v. Malco Products Corp. (D. C.) 299 F. 996. The substitution merely impairs or diminishes efficiency, without destroying the substantial identity of structure, operation, and result. King Axe Co. v. Hubbard (C. C. A.) 97 F. 795. What Taft, C. J., (then Circuit Judge) said in that case might well be repeated here:

"This is an instance, not infrequent in patent litigation, where the infringer has sought to evade the claims of a patent, the substance of which he is appropriating, by deliberately impairing the function of one element, without destroying the substantial identity of structure, operation, and result."

Walker (5th Ed.) § 368, defines the rule:

"Structures which are designed merely for the purpose of evading the spirit of the invention, but which contain all the elements of the claims, are infringements of the patent."

Section 376, supported by abundant authority, recites:

"The comparative utility of the plaintiff's and the defendant's process, machine, manufacture or composition of matter, is not alone a criterion of infringement. No man is permitted to evade a patent by simply constructing the patented thing so imperfectly that its utility is diminished."

The second alleged omission tendered in defense, involves the element: "Divergent inclined members secured to the top of said frame and extending upwardly and outwardly beyond the face of the front door and having their outer ends in the plane of the side walls of the boxlike structure." It is these divergent inclined members, extending upwardly and outwardly beyond the face of the front door, that sustain the tension of the springs when the door is held closed by the latch, and sustain the weight of the door when it is released to fly open and upward; the springs being in the plane of the hinges.

The defendants made a show of generous concession in admitting equivalency in the matter of the door springs. This element of springs is described in the claim as follows: "Springs, secured to the outer ends of said inclined members and to the door, and lying in the plane of the hinges." Omitting the springs, they substitute short lengths of shock rubber, rigged with snap hooks at both ends, for attachment to the inclined members and the bottom of the door, conceding this to be a substituted equivalent for the springs. The fact is that the divergent members, upwardly

and outwardly inclined, to which these springs or elastic shock rubbers are attached, are not omitted at all. These are simply shortened so as to bring them within, or short of, the distance to the plane of the side walls of the boxlike structure. This, to my mind, after a careful observation of the device itself, which was brought into the courtroom as an exhibit, of photographs of both those of the plaintiff and the defendants, together with the letters patent and file wrappers, seems a mere colorable evasion.

In oral argument and in voluminous briefs, the defendants' counsel insists that there is a specific difference; that Smith's range of equivalents is so narrow and limited as to restrict him to the specific details of his patent, because his original claims were rejected on the patents of Whitehead, Andrew, Stitzer, Stedeker, and Escude (these were patentees of horse race starting devices), in that there was nothing new or patentable over these references, in the employment of wire mesh with fabric covering a portion of it, nor with separate inlet doors and a common exit door, or in means for opening said exit door, or in a latch and spring for opening the door. But Smith is justified in his rejoinder that it was precisely these "divergent inclined members secured to the top of said frame, and extending upwardly and outwardly beyond the face of the front door, and having their ends in the plane of the side walls" that were finally allowed, after a full review by the Patent Office of the state of the prior art. It is precisely these divergent upwardly extending members that the defendants use, whether or not their outer ends terminate precisely in the plane of the side walls of the boxlike structure and whether or not the shock rubber (springs) connected thereto are in the exact plane of the hinges. In this connection, upon a view of the rather crude device exhibited, the divergent members on top of which had been variously disturbed and removed, and upon which point witnesses testified, and a study of the photographs in the record, I am not at all convinced that these divergent members were much out of the plane of the outer wall in fact when in use. Assuming that they were, however, my conclusion is that, whatever difference there might be in location, position, or length of the divergent members, they were for all practical purposes identical with those of Smith, and, under the authorities already considered, the change of position or location of an element, which is substantially the same, functioning in substantially the same way to ob-

tain the same result, cannot avert a charge of infringement.

A decree may be entered for plaintiff accordingly.