## KEY BOILER EQUIPMENT CO. v. COLEMAN.

Circuit Court of Appeals, First Circuit. December 4, 1929.

No. 2364.

196

Nathan Heard, of Boston, Mass., and Phillips W. Moss, of St. Louis, Mo. (Frederick A. Tennant, of Boston, Mass., on the brief), for appellant.

Jesse A. Holton, of Boston, Mass., for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a suit in equity brought by the Key Boiler Equipment Company against Albert M. Coleman for infringement of United States letters patent No. 1,391,738, issued September 27, 1921, to Frederick E. Key, and now owned by the plaintiff, for a sealing paste. The defenses are invalidity, anticipation, and noninfringement. In the District Court the patent was found to be valid and not infringed. A decree was entered dismissing the bill, and the plaintiff appealed.

In the application for the patent, the applicant sought the allowance of nine claims. In the Patent Office the first five claims were rejected on two prior art patents, No. 381,-449, issued to Watkins April 17, 1888, and No. 579,142 issued to Emery March 23, 1897 (106-8), cited by the Examiner. The applicant acquiesced in their rejection. The remaining four claims, originally numbered 6, 7, 8, and 9, were allowed, and are now claims 1, 2, 3, and 4 of the patent.

The claims of the patent read as follows:

"1. A sealing paste of the character described comprising graphite powder mixed with molasses and water.

"2. A sealing paste comprising graphite mixed with a fermentative substance capable of expanding and hardening when subjected to heat and a substance preventing fermentation mixed with the aforesaid ingredients.

"3. A sealing paste of the character described comprising graphite mixed with molasses, and a substance preventing fermentation of the molasses.

"4. A sealing paste of the character described comprising graphite mixed with molasses and sodium bisulphite."

The rejected claims read:

"1. A sealing paste comprising a lubricant mixed with an adhesive which expands, carbonizes and hardens at a temperature lower than 400° F.

"2. A sealing paste comprising graphite mixed with an adhesive which expands and hardens at a temperature lower than 400° F.

"3. A sealing paste comprising graphite mixed with an adhesive fluid which expands and hardens in its expanded condition when subjected to a temperature higher than 212° F.

"4. A sealing paste of the character described comprising graphite powder ground with a highly adhesive fluid which expands, carbonizes and hardens in an expanded condition when subjected to a temperature below 400° F.

"5. A sealing paste of the character described comprising graphite mixed with molasses."

In the District Court it was held that, by reason of the action of the Commissioner in rejecting these claims and the acquiescence of the applicant, the claims that were allowed were restricted in their scope and so construed the defendant's paste did not infringe, citing Ventilated Cushion & Spring Co. v. D'Arcy (C. C. A.) 232 F. 468, 470.

The legal effect of the ruling was that, because of their cancellation, with the acquiescence of the patentee, the rejected claims were to be regarded as invalid; that the allowed claims could not be construed broadly and given a scope coextensive with that of the rejected claims; and that, in order to find that the defendant's paste infringed the claims of the plaintiff's patent, it was necessary to give them a scope coextensive, at least, with the scope of the rejected claims.

In view of the judgment dismissing the bill because of noninfringement, the questions are: (1) Whether the claims of the patent are subject to the restricted construction placed upon them; and (2) whether on the evidence they are infringed when subjected to such construction.

We think the ruling, that the claims of the patent could not be given a construction co-extensive with the broad claims that were rejected, was correct. Ventilated Cushion & Spring Co. v. D'Arcy (C. C. A.) 232 F. 468, 470; Lionne Co. v. Cushman-Hollis Co. (C. C. A.) 7 F.(2d) 83. Even in Southern Textile Machinery Co. v. United Hosiery Mills Corp., 33 F.(2d) 862, 866, decided by the Circuit Court of Appeals for the Sixth Circuit and especially relied upon by the appellant, that court said: "The estoppel should go no

further than to bar the patentee from reliance upon the canceled claim [only one claim canceled there] in its broadest or generic construction."

Dealing with the second, third and fourth claims of the patent, it appears that claims 2 and 3 include as an element, "a substance preventing fermentation," a preservative; and that claim 4 calls for a specific element, "sodium bisulphite," a preservative; and it appears that no such element was embraced in any of the five claims that were rejected. As to these claims it is evident that the judgment of the District Court, dismissing the bill for noninfringement, was right, if the evidence shows that the defendant's paste did not contain a preservative.

We think the evidence, fairly construed, discloses that the defendant's paste does not contain a preservative, and that claims 2, 3, and 4, for this reason, if for no other, are not infringed. The plaintiff's expert although he was given a specimen of the defendant's paste and analyzed it, testified that he did not know whether it contained a preservative or not, and claimed that, in making his analysis, he did not make a test to ascertain whether it contained a preservative. The defendant's evidence was that his paste was made by simply mixing powdered graphite with corn syrup in its commercial state and as purchased from the Corn Products Sales Company, and that his paste did not contain sodium bisulphite or any other preservative; that the Pure Food Law, which went into effect back in 1905 or 1906, did not allow the use of sodium bisulphite in corn syrup; and that the first sale and delivery, which the Corn Products Company made to the defendant, was in the last days of December, 1927. The plaintiff's expert also testified that he knew that corn syrup (otherwise known as glucose) was sterile, or practically so, as it came on the market. The plaintiff, however, was permitted to read from an Encyclopedia Britannica which was not introduced in evidence, and the date of the publication of which was not given, that in the manufacture of glucose (after filtration and concentration of the liquid in vacuum pans to a designated specific gravity) "a small quantity of sodium bisulphite solution [was] added to bleach it, to prevent fermentation." But as there was no evidence that the defendant's paste contained sodium bisulphite or any other preservative, or that corn syrup or glucose, as it came on the market during the period covered by the defendant's manufacture of his paste, contained it, and as there was positive testimony that the defendant's paste did not contain a preserva-

tive, we are satisfied that claims 2, 3, and 4 are not infringed.

Now as to claim 1: This claim contains three distinct elements, graphite powder, molasses and water. The single element distinguishing this claim from any one of the five rejected claims is the element water; for it is not found as an element in any of those claims. The two remaining elements of claim 1, graphite powder and molasses, are found in the rejected claims. Ground graphite is the element called for by the term "a lubricant" in rejected claim 1, and it is specifically named in rejected claim 4; and molasses is an element called for by the words, in rejected claim 1, "an adhesive which expands, carbonizes and hardens" when subjected to heat, and in rejected claim 4, by the words, "a highly adhesive fluid which expands, carbonizes and hardens in an expanded condition" when subjected to heat, and is specifically named in rejected claim 5.

As claim 1 of the patent differs from rejected claim 4, because it includes water as an added element, which rejected claim 4 does not, and was allowed by the Patent Office for that reason, it is evident that, if the defendant's paste answers the call of rejected claim 4, it does not infringe claim 1 of the patent. It is certain that the defendant's paste contains graphite powder, the first element called for in rejected claim 4. The evidence is abundant that corn syrup or glucose is a highly adhesive fluid, which expands, carbonizes, and hardens when subjected to heat, and supplies the remaining element called for in rejected claim 4; and the evidence is that no water is added to the graphite powder and corn syrup in the defendant's paste. The plaintiff contends, inasmuch as the evidence shows that corn syrup or glucose, as it comes on the market, contains about 10 per cent. of water, that the added element of water embraced in claim 1 of the patent is present in the defendant's paste and that it infringes claim 1 of the patent. But we do not think this is so, when claim 1 of the patent is properly understood; for the evidence, also given by the plaintiff's expert, is that the water content of molasses, as it usually appears upon the market, is nearly the same as in corn syrup. If the plaintiff's contention in this respect were correct and the defendant's mixture consisted of graphite powder and molasses as it comes upon the market, without added water, such a mixture would infringe claim 1 of the patent. But this is plainly not so. Furthermore, the specification of the patent gives a formula for making the plaintiff's paste. The

first element stated in the formula is: "A low grade New Orleans molasses, * * * 6 gallons." The second is: "A small quantity of water may be mixed with the molasses. * * *" When claim 1 of the patent is read in the light of this formula, it is evident that the small percentage of water, which either common molasses or corn syrup ordinarily contain as it comes upon the market, is not to be considered in determining whether a mixture of graphite powder and common molasses or corn syrup infringes the claim. At any rate, not in the situation disclosed by the evidence in this case, for such a paste clearly falls within the scope of rejected claim 4, and the plaintiff is estopped from claiming a construction of claim 1 coextensive with rejected claim 4.

We find it unnecessary to consider any other question in the case.

The decree of the District Court is affirmed, with costs to the appellee.