**MAGIC CITY KENNEL CLUB, Inc., et al. v. SMITH.** *

Circuit Court of Appeals, Tenth Circuit.
January 21, 1930.

No. 112.

*Certiorari granted 50 S. Ct. 410, 74 L. Ed. ——.

Arthur C. Brown, of Tulsa, Okl., for appellants.

E. Howard McCaleb, of New Orleans, La. (Elton B. Hunt and W. L. Eagleton, both of Tulsa, Okl., on the brief), for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge. The trial court decreed that appellants had infringed three patents of appellee, ordered an accounting, and entered judgment for $20,000 on a bond given to dissolve a temporary injunction. All of the patents relate to devices used in dog racing.

## Patent No. 1,379,224.

This patent, and the next one discussed, have been three times in litigation with defendants whose devices were similar to the one here found to infringe. Judge Burns held there was infringement. Smith v. American Electric Rabbit Racing Ass'n (D. C.) 21 F.(2d) 366. The Court of Appeals of the Fifth Circuit affirmed the decree without opinion. Id., 26 F.(2d) 1016. Judge Faris, of the Eastern District of Missouri, on June 15, 1928, followed Judge Burns, without attempt at analysis. Thereafter, and on June 23, 1928, Hon. Smith Hickenlooper, now Circuit Judge, disagreed with Judge Burns, and held there was no infringement. Smith v. Springdale Amusement Park (S. D. Ohio) 39 F.(2d) 92. The two opinions of Judges Burns and Hickenlooper describe the patents and the prior art with such accuracy that any extended statement here would be but repetition.

Patent No. 1,379,224 concerns itself with a mechanical contrivance by which a lure is kept ahead of racing dogs. It is a combination of a race track, adjacent to which is a rail track, on which runs the conveyor car. Hinged to the car is an arm which extends horizontally over the race track, on which arm is mounted the lure. Underneath the outer end of the arm is a wheel, which supports it, and which runs on the race track. Patent No. 1,507,440 covers a housing for the rail track, and patent No. 1,630,812 an improved conveyor car. The car is operated from the judge's stand, or some other fixed point.

The defendants' apparatus, as far as the first patent is concerned, is essentially the same, excepting the arm carrying the lure is rigid, is not hinged to the car, and does not use the wheel; and defendants' casing is on the inner side of the race course, while claim 1 of plaintiff's patent locates the casing around the "outer" side. The contention of defendants is that the patent is but a combination of known elements in an old art, and should be accorded a narrow range of equivalency; that, so construed, defendants do not infringe. That a construction broad enough to sustain the decree of infringement would invalidate the patent by reason of the prior art. The plaintiff concedes that the patent is a combination; that it "combines elements— some new, some old—not found in the prior or any other art." The courts heretofore construing the patent have agreed that it is a combination, which it is. But the plaintiff claims the genius of the invention, the thing that made dog racing a commercial success, is the horizontal arm; that the hinge and the wheel are but mechanical background, themselves not patentable, a mere matter of selection from any number of suitable accessorial equipments. That the "outer side" means outside the race track proper, and not outside the circular course; and in any event, the designation is an immaterial matter of location.

Mechanical contrivances for carrying a lure in front of racing dogs are not new, as the opinions of Judges Burns and Hickenlooper show. For example, the patent to Walsh (611,876, October 4, 1898) discloses the race track, the adjacent rail track, a conveyor car operated from the judge's stand, and an arm projecting from the car over the race track, carrying the lure. But the arm, in Walsh, is not of one piece; the section attached to the car is inclined vertically to clear the fence, which requires a second section at the end, to be dropped down to the track, to support the sled that carries the lure. Smith does it better. He eliminates one section by the simple device of extending the arm horizontally through a slot running the length of the fence or housing. This fence, or housing, is necessary to keep the dogs away from the car, and to avoid distraction—to keep their minds on the race.

We have no doubt that this is an improvement over the prior art, and for the purpose of this case, assume that it is patentable. Since the defendants use a one-piece horizontal arm running through a continuous slot, there would be infringement, if the plaintiff's claims are broad enough to exclude the world from the use of the horizontal arm. It is academic that the right of a patentee is measured by the claims allowed, and not what might have been allowed. Smith was not allowed a claim covering in terms this single idea of an horizontal arm. He claimed, and was allowed, a combination of various ele-

ments. Considering first the question of the rotatable wheel and the hinge: An examination of the file wrapper discloses that claims 1 and 2 originally applied for were rejected and abandoned. In general terms, they covered any race course suited for dogs, and a mechanical conveyor for the lure. Claim 3, as applied for, covered the combination of race track and rail track and conveyor car, and "an arm attached to said car extending midway of said course, a wheel rotatably mounted on said arm, and a lure mounted on said arm." Claim 4, as applied for, described the arm as "a horizontally extending arm hinged to said car extending midway of said course, a wheel rotatably mounted near the end of said arm, and resting upon the ground, a platform supported by said arm and a lure or quarry mounted upon said platform for attracting the dogs." Claims 5 and 6 covered other elements not embraced in this patent, and are unimportant save to note that both refer to the horizontal arm resting on a wheel.

In all the claims as applied for, as amended from time to time, and as allowed, whenever the projecting arm is claimed, the rotatably mounted wheel supporting it is claimed. The Patent Office never questioned the patentability of the device of an horizontal arm hinged to the car and resting on a wheel. No amendment was suggested as to this feature. It was allowed, in claim 4, on presentation. On the other hand, the Patent Office never passed upon, nor had the opportunity to pass upon, the patentability of the horizontal arm alone. The precise query, then, is whether the patent excludes the world from the use of an horizontal arm, without the wheel or hinge.

The principles of law are not in dispute. The patentee was not a pioneer in the art. Both Judges Burns and Hickenlooper agree that the patent is a combination of known elements. Judge Burns quoted the general rule governing combinations, from Walker on Patents (5th Ed.) § 349, as follows: "Omission of one element or ingredient of a combination covered by any claim of a patent averts any charge of infringement based on that claim, whether or not the omitted ingredient was essential to the combination of the patent, and whether or not it was necessary to the operativeness of the machine."

The same rule, in almost the same language, is laid down by the Eighth Circuit Court of Appeals in Measuregraph Co. v. Grand Rapids Show Case Co., 29 F. (2d) 263. Judge Lewis, in that opinion, has gathered so many authorities on the point that further citation would be superfluous.

■ This rule, however, must be construed in the light of common sense and fairness, and it is likewise settled that one may not avoid infringement by the mere substitution of a known mechanical equivalent, performing substantially the same function, in substantially the same way, for one of the elements of the combination. The rule was early stated, in Gould v. Rees, 15 Wall. (82 U. S.) 187, 193, 21 L. Ed. 39: "Unquestionably the withdrawal of one ingredient in a patented combination and the substitution of another which was well known at the date of the patent as a proper substitute for the one withdrawn, is a mere formal alteration of the combination; and if the ingredient substituted performs substantially the same function as the one withdrawn, it would be correct to instruct the jury that such a substitution of one ingredient for another would not avoid the charge of infringement."

■ Where Judge Burns and Judge Hickenlooper disagreed was in the application of these rules to this patent. Judge Burns believed that the defendants' fixed arm without a supporting wheel, was a mere colorable substitution for the patentee's hinged arm and supporting wheel. Judge Hickenlooper thought otherwise. We are not advised as to the evidence before these courts, except that Judge Burns found, from the record before him, that the function performed by the wheel and hinge was merely one of support, which was supplied by the mechanical equivalent of rigidity in the arm. The record before us contains evidence, from plaintiff's witnesses, to the contrary. That evidence discloses that the function of the hinge and wheel is to avoid crystallization of the arm from the vibration of the car; that the hinge and wheel take up the vibration, avoid crystallization and the consequent breaking of the arm. "That is why he went to the wheel and hinge." Defendants' rigid arm serves no such purpose; on the contrary, it answers a distinctly different purpose, that of causing the lure to bounce about, more nearly simulating a hare in flight. The patentee was careful, in all his claims and amendments, to describe the arm as resting on the wheel. He considered his idea then as a unit. In fact, the evidence shows that the patentee tried out the rigid arm and concluded it was impracticable, and then resorted to the hinge and wheel. Having tried the rigid arm and finding it unworkable; having devised the hinge and wheel to avoid crystallization; having scrupulously claimed the combination of the arm and wheel in every claim and amendment wherein either is mentioned—is a court jus-

tified now in accepting counsel's ipse dixit that the "arm's the thing" and the hinge and wheel but sketchy background, which we should disregard? The question is undoubtedly a close one, but considering that the art of mechanical dog racing is not new, that the patentee was not a pioneer in the field, and the substantial functions performed by the wheel and hinge not served by the rigid arm, we are of the opinion that the law laid down in I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 444, 47 S. Ct. 136, 141, 71 L. Ed. 335, is applicable, that "if the claim to a combination be restricted to specified elements, all must be regarded as material."

■ The second point of defendants is that infringement is avoided because their casing is on the inner side of the course, while claim 1 of plaintiff's patent locates it "around the outer side of the race course." It is argued that claim 3, as applied for, was rejected, and later allowed when the location was limited by amendment to the "outer side." It is undoubtedly the rule that a decision by the Patent Office is an adjudication. If the applicant disagrees with the decision, he must appeal or forever after hold his peace. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335; Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 41 S. Ct. 600, 65 L. Ed. 1162; Hubbell v. United States, 179 U. S. 77, 21 S. Ct. 24, 45 L. Ed. 95; Shepard v. Carrigan, 116 U. S. 593, 6 S. Ct. 493, 29 L. Ed. 723; Key Boiler Equipment Co. v. Coleman (1 C. C. A.) 36 F.(2d) 195. But the Patent Office made no decision on the question of location of the casing. Claim 4, as applied for, was allowed without quibble, and that claim is not limited to the "outer side" of the race course. On the contrary, the language is broad—"adjacent said course on one side." Moreover, the Patent Office gave as its reason for rejection of claim 3 that, "Moss is provided with a housing and it would not be invention to provide Walsh with one." The matter of location was not adjudicated, and the cited cases do not apply. The further point that the matter of location is a substantial change in the combination is a question of fact. The evidence is sufficient to support the finding that the change in location of the casing is colorable and not substantial.

The bill should be dismissed as to Patent No. 1,379,224.

## Patent No. 1,507,440.

■ This patent deals with the housing for the conveyor car and the rail track. Claim 1 covers a combination in such housing of (a) posts set in the ground; (b) timbers attached to form a frame; (c) boards attached to timbers to form continuous inclosure; (d) having a continuous opening in one side; (e) truss rods attached to the closed side, to support the housing above the opening. Claim 2 covers the same structure, with "upper timbers being inclined upwardly, adjustable stay rods connecting the upper ends of the posts to support the inner side wall of the frame." Claim 3 describes the stay rods as "screw-threaded adjustable stay rods."

In other words, a wooden housing with truss rod support, a slot in it, and adjustable stay rods to take up the spread. The defendants housed their track with wood, but did not use the truss or adjustable stay rods.

■ While the validity of plaintiff's patent is not specifically in issue, this court would not be warranted in affirming a decree predicated on a device clearly not patentable. The Supreme Court has held that even if the question of patentability is ignored by the parties, "neither the circuit court nor this court can overlook the question of patentability." Hill v. Wooster, 132 U. S. 693, 698, 10 S. Ct. 228, 230, 33 L. Ed. 502. To drive posts into the ground and nail boards thereon, and roof it, is no indication of inventive genius. An idea that would naturally occur to a skilled mechanic acquainted with the business, in the ordinary processes of manufacture or construction, is not patentable. Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34; Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Thompson v. Boisselier, 114 U. S. 1, 5 S. Ct. 1042, 29 L. Ed. 76; Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438; Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 285, 37 S. Ct. 502, 61 L. Ed. 1136.

In addition, the housing patented has a continuous slot in it. But in 1903, Bertram (No. 729,120) disclosed a precisely similar method of continuous contact with a track outside the housing. His specification describes a housing for a third electric rail "in which is formed a longitudinal slot or opening."

Patentability of this device, if it exists at all, must depend upon the truss rod support or the adjustable stay rods, neither of which defendants use. Defendants' housing is but a box, with a slot next the roof on one side; the roof is supported by a cleat nailed between the closed side and the timbers of the roof extended, which plaintiff calls a "truss"; perhaps it is, but plaintiff has no monopoly on "trusses" as such, and the de-

fendants' cleat is at best no more than generically kin to plaintiff's rod. If there is patentability disclosed herein, it must arise from the specific structure; the defendants' housing does not, in our opinion, fall within its necessarily narrow range of equivalency. Accordingly there is no infringement.

The bill should be dismissed as to patent No. 1,507,440.

### Patent No. 1,630,812.

This patent covers the conveyor car. Claims 1 and 2 are set out in the margin.[1] Claim 3 further amplifies the element of guides and bolts by describing them as "guides on said cross bar and extending upwardly and outward to engage the side frame, thereby holding the cross bar in horizontal position, bolts passing transversely through the cross bar on both sides of the pivotal connection between the cross bar and cross member."

Four wheels mounted on two axles, the front axle being pivoted on a king bolt, and the frame supporting motive power, are not novel in themselves. Buggies, automobiles, and hand cars contain these. This conveyor car, designed for high speed on a short circular track, without human guidance, must be so constructed as to quickly bring the front axle back to alignment after it has made the curve; hence the springs. And it must be so constructed as to resist the centrifugal force which would throw the cross bar off of horizontal, on the curves, if not restrained; hence the guides. The car, found to infringe, has four flanged wheels, two axles, the front pivoted on a king bolt; springs are used to bring the front wheels back to alignment, and guides are used to resist the centrifugal force.

The difference between the parties is again a matter of the interpretation to be given this patent. The burden is upon plaintiff to show infringement, and the evidence is not satisfactory; but on the whole it seems clear as the master said in his opinion, that the defendants do not use the bolts to connect the springs, nor do they have means of adjustment; and the guides on defendants' car are on the frame and engage the support, and not the converse, as in plaintiff's. The question then is whether, in view of the prior art, the patentee is limited to his specific structure, within narrow limits, or whether he should be accorded a broad range of equivalents. The controversy centers around the springs and the guides.

First, as to the springs: Without any attempt to exhaust the prior art, it is sufficient to say that as far back as 1867, in the patent of Fairfax (No. 60,868), a patent was granted for railroad cars, the principal object of which was to enable the car to turn curves easily. It disclosed a pivoted axle and "behind the truck are placed half elliptic springs which bear against the rear ends of the pedestal and bring them even and square with the car after turning a curve. Instead of elliptic, spiral springs may be employed." And in 1881, in the patent of Robinson (No. 243,796), spiral springs are disclosed "to assist the trucks into their normal position." And in 1895 the patent of Allen (No. 532,937) discloses springs to assist in bringing the wheels back to normal position, and adjustable bolts to regulate tension of the spring. The master, in his opinion, states that claim 1 of the patent is for springs used for this purpose, without limitation as to specific construction. The claim, if so interpreted, is clearly anticipated by the above references. Moreover, after rejection, and in support of amended claims detailing a specific structure, the applicant advised the Patent Office that:

"The claims in this case have been reduced in number and claim 1 has been amended to bring out the fact that the support is provided with guide members which engage the frame and hold the support in horizontal position. There does not appear to be any such structure in any of the references cited by the examiner, and it is believed that this limitation places this claim in condition for allowance.

"Claim 2 has been amended to bring out the specific structure of the means to which the springs are secured and calls for bolts ex-

---

[1] 1. In a traction car of the class described, the combination with a frame, of a motive power mounted upon said frame, traction wheels mounted upon an axle rotating in bearings rigidly attached to said frame, wheels mounted upon a second axle rotating in bearings mounted upon a support adapted to rotate pivotally about its mid-center, guides on said support and engaging the frame to hold said support in horizontal position and springs connected between said support and the frame adapted to hold said wheels normally in alignment with the aforementioned wheels.

2. In a device of the class described, the combination with a motor driven car, of an axle rotatably mounted in bearings rigidly attached to said car, wheels fixedly mounted upon said axle, a second axle rotatably mounted in bearings attached to a cross bar pivoted at its mid-center to the frame and adapted to turn to right or left, bolts extending through said cross bar and being provided with adjusting means and springs connected from said bolts to the frame on either side of its center adapted to hold said cross bar normally at right angles to the direction of travel of the car.

tending through the cross bar and having adjusting means thereon. This is a specific manner of providing securing means for the springs and the adjustment of the springs is absolutely essential for the proper functioning of the device.

"The new claim 3 very distinctly and minutely points out applicant's construction and includes both the guide members, the bolts to which the springs are attached and the fact that one of the cross members carries the cross bar on which the pivotal axle is mounted, and the second cross member carries the propelling means. This is a very specific construction and it is believed that the examiner would be clearly justified in passing this case to issue."

We conclude, as to the springs, that the patentee is limited to the structure claimed, and the departure in defendants' car is sufficient to avoid infringement.

As to the guides: The patent to Barrow (1,412,383, April 11, 1922) discloses "retaining blocks" secured to the undersides of the frame, the purpose of which is the same as the "guides" in the patent. The master does not refer to the guides in his opinion, and does not find infringement on account of the guides. His finding is:

"That by reason of the new and novel features of Patent No. 1,630,812, as pointed out, Smith is entitled to a range of equivalents commensurate to the scope of his invention; and that construed in this light the traction car in use by the defendant Magic City Kennel Club, by reason of the use of the springs called for in the Smith Patent and the equivalent means of fastening same to the car, and the use of the horizontally extending lure-carrying arm, and the use of the pivoted front axle arrangement in connection therewith, infringes the claims of this patent."

Opposing centrifugal force by the device of retaining blocks or guides does not require any high degree of inventive genius; in view of the prior art, and the failure of the master to find infringement from the unsatisfactory evidence, we cannot find infringement because of the guides.

We disagree with the master in according the patent a broad range of equivalents, and in finding novelty in the king bolt for the front axle. The use of the horizontal arm is not a part of this structure. Without detailing it, the history of this patent in the Patent Office discloses an intent, on the part of that office, to confine the patent to the specific structure.

The bill should therefore be dismissed as to patent No. 1,630,812.

### The Bond of $20,000.

Appellants further assign error on account of the allowance of a temporary injunction on September 24, 1927, which was after the decision of Judge Burns and before the decision of Judge Hickenlooper; and particularly that the injunction order provided for its dissolution only by the giving of a bond in the sum of $20,000 stipulated damages. The final decree awarded plaintiff judgment not only for all the profits derived from the infringement, but in addition for $20,000, the penalty of the bond. Both Judges Hickenlooper and Faris commented upon the unsavory reputation of the so-called sport of dog racing, and the questionable gambling that is generally attributable to it. Naturally neither party raises the question. Since the case has been disposed of on other points, the question presented need not be noticed further than to say that the machinery of the courts must not be used, directly or indirectly, to require one party to account to another for profits derived from a violation of any law. The decree awarding judgment for all legitimate profits would compensate plaintiff for the wrong done if there had been an infringement; an added $20,000 could only serve as a subterfuge for a judgment for gambling profits or concessions.

The decree is reversed, with directions to dissolve the injunction, discharge the bond, and dismiss the bill.